In re 7H LAND & CATTLE CO., aka 7H Land and Cattle Corp., aka Seven H Land & Cattle Co., Inc., a Nevada corporation, Alleged Debtor.

Lynn W. Rose, individually, and dba Lynn W. Rose Livestock & Cattle Company, Alleged Debtor.

Elaine G. Rose, individually, and dba Lynn W. Rose Livestock & Cattle Company, Alleged Debtor.

Bankruptcy Nos. 80–00183 to 80–00185.

United States Bankruptcy Court,
D. Nevada.

Nov. 4, 1980.

See also, 6 B.R. 29.

Lionel, Sawyer & Collins by Richard W. Horton, Reno, Nev., for alleged debtors.

Hawkins, Rhodes, Sharp, Barbagelata & Haase by Prince A. Hawkins, Reno, Nev., for petitioning creditor.

## OPINION AND DECISION

BERT M. GOLDWATER, Bankruptcy Judge.

On March 28, 1980, Security Bank of Nevada (Security) sole creditor of Lynn W. Rose, Elaine G. Rose, and 7H Land & Cattle Co., Inc., a Nevada corporation, (7H) filed three separate petitions for involuntary bankruptcy of those persons and the corporation which were consolidated for trial.

Lynn Rose bought and sold cattle in several Western states. During January, 1980, he first did business at a bank in Idaho under the fictitious name of Lynn Rose Livestock using Idaho First National Bank in Twin Falls, Idaho. On January 21, 1980, he drew check No. 32 on that bank for $560,000 and on January 25, 1980, he drew check No. 45 on the bank for $150,000. Both checks were deposited on the dates of the checks in the corporate account of 7H at Security at Elko, Nevada, which was notified on February 1, 1980, by Idaho First that the checks were dishonored for insufficient funds.

On February 4, 1980, Rose opened a corporate account for 7H with Idaho Bank and Trust Bank at Twin Falls, Idaho. Rose wrote the following checks on that account, all of which were deposited at Security for the corporate account at Elko and were returned for insufficient funds:

| Check No. | Date | Amount |
|---|---|---|
| 001 | 2–5–80 | $399,862.61 |
| 002 | 2–6–80 | $200,000.00 |
| 003 | 2–7–80 | $560,000.00 |
| 004 | 2–7–80 | $238,000.00 |
| 005 | 2–7–80 | $ 70,000.00 |
| 006 | 2–12–80 | $200,000.00 |

The Lynn Rose Livestock account at Security had gradually shown less activity as the 7H corporate account became active beginning in December, 1979, through March, 1980.

At various times the account of 7H at Idaho Bank and Trust had substantial amounts on deposit from collected funds. For instance, on February 14, 1980, there was $425,000 wired at Rose's request directly to Security. On February 21, 1980, another $200,000 of collected funds were wired to Security to credit the 7H account. Nevertheless during the month of February, 1980, there was $1,286,062.22 deposited at Idaho Bank and Trust of which over $400,000 were returned items.

The reason Rose moved his account in Idaho from the Lynn Rose Livestock account at Idaho First National to create the 7H corporation account at Idaho Bank and Trust, was that the bank was not crediting his account until deposited checks were collected. For this reason checks drawn on the account at Idaho First National ($560,000 and $150,000, January 21, 1980 and January 25, 1980, respectively) and deposited at Security were returned. Checks 001 through 006 listed above totaling $1,667,862.61 were returned for insufficient funds during the period those checks came to Idaho Bank and Trust from deposit at Security. The $625,000 wired to Security from Idaho Bank and Trust was not enough to cover the $710,000 of checks refused by Idaho First National. Rose found out within a few days of creating the 7H account at Idaho Bank and Trust that credit would not be given for deposited items until such items cleared.

In the meantime, Security was giving 7H credit for all deposits of checks which were later returned by the Idaho banks. Rose's first deposit to the 7H account at Idaho Bank and Trust on February 4, 1980 was $64,539.48. On February 5, 1980, he drew a check on that account and deposited it at Security for $399,862.61.

Actual deposits at Idaho Bank and Trust during the month of February, 1980, were more than a half million dollars less than checks Nos. 001 through 006 written on that account and deposited at Security.

On February 11, 1980, Rose deposited $218,000 received as a loan from one Shaw in the Idaho Bank and Trust account of 7H. On February 14, 1980, Rose purchased a cashier's check from Idaho First National Bank on his Rose Livestock account, signed the check over to Shaw to repay Shaw $226,000 and the balance was used to pay other creditors. There was no testimony as to the source of the $500,000 in the Idaho First National Bank account of Lynn Rose Livestock.

Suffice to say that while Rose was writing checks on his Idaho First National Lynn Rose Livestock account and Idaho Bank and Trust 7H corporate account without sufficient funds which checks were deposited with Security in Elko, Security was crediting his deposits against checks drawn on Security. During this time Rose had accumulated a half a million dollars in Idaho First National which he withdrew by cashier's check and repaid Shaw and other creditors.

The manager of the Idaho Bank and Trust Company at Twin Falls watched the account carefully because of the magnitude of the deposits and checks drawn. He concluded that his suspicions were correct that something serious was amiss and that there was a check kiting scheme through his bank. On February 13, 1980 a deposit had been made to the 7H account of $260,672.55. One of the checks was from R. A. Livestock and drawn on a sister branch of Idaho Bank and Trust at Burley, Idaho. The check was for $25,981.79. A call to the manager of the sister branch revealed that R. A. Livestock had insufficient funds but were "good customers" and the Burley Branch Manager was certain that R. A. Livestock would make a deposit at Burley which would cover the check deposited by 7H at Twin Falls. The Burley Branch honored the check. When the bookkeeping at Burley was investigated the R. A. Livestock account had received an $80,000 deposit from a check drawn by 7H on Security at Elko which latter bank had credited funds from checks

drawn on Idaho Bank and Trust at Twin Falls which had been returned for insufficient funds.

Although Security is the sole creditor, a single creditor may, under 11 U.S.C. 303(h)(1) petition and establish involuntary bankruptcy where there are special circumstances amounting to fraud, trick, artifice or scam. See this Court's opinion of June 20, 1980, 6 B.R. 29, in this case.

The conduct of Lynn Rose individually and 7H corporation which he manipulated constitutes a scheme under which Rose and 7H were generally not paying Security for the credits advanced through the scheme. It is eminently clear that Rose and 7H were paying debts as they became due to third persons and now owe nothing to others by use of the checking scheme.

There is no evidence to connect Mrs. Rose to the scheme. Nor is there any reason to issue an order for relief against her merely because she is married to Rose (albeit separated) and is considered to have benefitted from having her personal support and debts paid as well as some undefined interest in the business known as Rose Livestock and 7H Cattle, a corporation. She is not, however, entitled to costs and fees because it was reasonable for petitioner to include her by reason of the marriage relationship.

When Security officers realized the account of 7H was overdrawn in excess of a million dollars, Rose was called in. A promissory note was prepared for the overdrafts created by the scheme and other indebtedness. The note was signed by 7H and Rose and his wife. Rose admitted that cattle purchases in the spring of 1979 at prices more than he could obtain in the fall had put him in financial trouble. Rose had devised the checking system for credit at Security which honored checks against deposits without waiting for collection; this was precisely what the Idaho banks refused to do. The failure to have sufficient funds fell on the 7H account at Security while numerous large transactions were made on a daily basis with others until the whole scheme collapsed. At that time all creditors of Rose Livestock and 7H were paid except Security. Both Rose and 7H concede the obligation to Security on the forced credit and the note. The note is nothing more than evidence of the scheme; part of the note represents other unpaid loans. Some collateral was given or transferred to Security. This in itself is a preference because of the time of transfer. It may be moot as it now appears there are no other creditors against whom Security would be receiving a disproportionate recovery. 11 U.S.C. 547(b).

An Order for Relief should be entered against Lynn W. Rose, individually, and 7H Land & Cattle Company, a corporation. The petition against Elaine G. Rose is dismissed.