**In the Matter of Jane M. BUSICK, Debtor.**

**Bankruptcy No. 80–10502. Civ. No. F 86–175.**

United States District Court, N.D. Indiana, Fort Wayne Division.

Oct. 3, 1986.

Earl Raskosky, Fort Wayne, Ind., for debtor/appellant.

DeWayne H. Herman, Decatur, Ind., Ward Miller, Fort Wayne, Ind., for creditors/appellees: Erie-Haven, Inc., Northern Indiana Fuel & Light Co., Inc., Hal Page, Sr., Elizabeth Ann Page and Amoco Oil Co.

## ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on debtor/appellant Jane M. Busick's (Jane) appeal from a final order of the United States Bankruptcy Court for the Northern District of Indiana, entered April 5, 1985. That order granted an involuntary petition commenced against Jane by Erie-Haven, Inc. and Northern Indiana Fuel & Light Co., and subsequently joined by four other intervening creditors (creditors). After full briefing, the parties appeared before the court on July 15, 1986, for oral argument. The parties have submitted supplemental briefs pursuant to the court's order at that hearing, and the matter is now ripe for decision. For the reasons which follow, the order of the bankruptcy court will be reversed.

This case has a long and convoluted procedural history which need only be summarized here. Creditors filed a joint petition for involuntary relief against Jane and her husband, Leo, on February 14, 1980. The day after the bankruptcy court entered an order for relief by default on March 12, 1980, it received answers from Jane and Leo. The court returned them unfiled.

Shortly thereafter, creditors filed a petition to amend the joint involuntary petition and transform it into two involuntary individual petitions against Jane and Leo. Leave to do so was granted on June 27, 1980.

Jane filed a motion to reconsider the entry of default judgment during the same time period. At the hearing arising out of this motion, she argued that she was prejudiced by the entry of default judgment because she had a meritorious defense to involuntary bankruptcy. The bankruptcy court denied the motion in an order dated August 5, 1980. In so doing, the court

made several findings of fact. As summarized by the Seventh Circuit before which the case later was argued, these findings included:

(1) Leo Busick was engaged in the businesses of building homes, selling and installing swimming pools, and managing rental properties; (2) Jane Busick was not involved in Leo Busick's business affairs; (3) most of the Busicks' real property was owned in tenancy by the entirety; (4) the contracts for services and materials out of which the creditors' claims arose were entered into by Leo Busick; (5) there were no express agreements between Jane Busick and the creditors that she would be liable for the amounts due on the contracts; and (6) the materials and services were provided for the real property held by the Busicks as tenants by the entirety.

*Matter of Busick,* 719 F.2d 922, 923 (7th Cir.1983). Based on these facts, the bankruptcy court concluded that since the benefits of Leo's individual contracts inured to the real property held by Jane and Leo as tenants by the entirety, Leo could be presumed to have had the authority to act for Jane. This made Jane liable for the debts, and consequently defeated her argument that she had a meritorious defense to the involuntary bankruptcy petition.

Following months of further procedural entanglements, the case ultimately was appealed to the Seventh Circuit, resulting in the October 24, 1983 decision cited above which ordered the bankruptcy court to allow Jane to file a responsive pleading to the individual involuntary petition filed against her on July 2, 1980. *Id.* at 926–27. Following the trial, the bankruptcy court held on April 5, 1985, that Jane was indebted to the creditors, and granted the involuntary petition. Jane's motion to alter or amend this judgment was denied on March 11, 1986. Jane now appeals the decision of the bankruptcy court.

Jane has raised both factual and legal issues in this case. When a party in a bankruptcy appeal alleges factual errors, the Rules of Bankruptcy Procedure provide

the applicable standard of review. Rule 8013 reads:

On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy court's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

This high standard of review has been followed by district courts. *See, e.g., In re Clarkson,* 767 F.2d 417, 419 (8th Cir.1985); *In re Tesmetges,* 47 B.R. 385, 388 (E.D.N.Y.1984). The "clearly erroneous" language of the rule tracks the language found in Federal Rule of Civil Procedure 52(a), and cases construing the standard under Rule 52(a) are equally applicable to bankruptcy cases. *Matter of Louisiana Industrial Coatings, Inc.,* 53 B.R. 464, 467 (E.D.La.1985). The Supreme Court recently reaffirmed its longstanding definition of this standard: " '[A] finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " *Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)).

Unlike the "clearly erroneous" standard used to review factual findings of the bankruptcy court, legal conclusions are subject to de novo review. *In re Global Western Development Corp.,* 759 F.2d 724, 726 (9th Cir.1985). In addition, "the reviewing court must determine whether the trial court applied the proper legal standard to the facts." *In re Stratton,* 23 B.R. 284, 287 (D.S.D.1982).

### I. Law of the Case

As a preliminary consideration, Jane has raised by way of a motion for partial summary judgment an issue of collateral estoppel. In essence, she argues that the bank-

ruptcy court was precluded from finding facts following the trial of this case which differed from the explicit findings it made in its August 5, 1980 order, when it denied Jane's motion to reconsider the default judgment. At the hearing before this court on July 15, 1986, the court requested the parties to submit supplemental briefs on the issue of the applicability of the law of the case doctrine. Neither collateral estoppel nor the law of the case applies. The bankruptcy court's denial of Jane's motion for partial summary judgment will be affirmed.

■ The doctrine of collateral estoppel may be applied to preclude a party from relitigating an issue decided adversely to it in an earlier proceeding when the issue on which collateral estoppel is being asserted is identical to that determined in the prior action, when the controlling facts or legal principles have not changed significantly since the prior judgment, and when no special circumstances exist which would render preclusion inappropriate or unfair. *Montana v. United States,* 440 U.S. 147, 155, 99 S.Ct. 970, 974, 59 L.Ed.2d 210 (1979). While the earlier proceeding may involve identical issues, a fundamental aspect of collateral estoppel is that it be a different proceeding from the one in which the issue is raised.

While the instant case was originally filed on February 14, 1980, it has yet to come to a conclusion. Despite its numerous journeys up and down the judicial hierarchy, only one case has ever existed. Therefore, the doctrine of collateral estoppel does not apply.

■ The applicable doctrine, if any, is the law of the case. This doctrine covers a variety of situations in the context of a single case. The one most applicable here relates to the need for a single court to adhere to its own prior rulings without need for repeated reconsideration. *See* 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4478 (1981). Unlike collateral estoppel, the doctrine has a measure of flexibility built into it; a court retains the power to reconsider a

matter occurring in the same case at an earlier time if it so wishes. *Appleton Electric Co. v. Graves Truck Lines,* 635 F.2d 603 (7th Cir.1980), *cert. denied,* 451 U.S. 976, 101 S.Ct. 2058, 68 L.Ed.2d 357 (1981). The doctrine does not apply at all, however, when a higher court vacates the judgment of the lower court. In that case, neither court is constrained by the law of the case in subsequent proceedings, since the original "law" no longer exists. *Johnson v. Bd. of Educ. of the City of Chicago,* 457 U.S. 52, 53–54, 102 S.Ct. 2223, 2224, 72 L.Ed.2d 668 (1982).

While the Seventh Circuit did not vacate the judgment of the bankruptcy court's August 5, 1980 order, it did reverse the court and hold that it abused its discretion in not allowing Jane to file a responsive pleading to the involuntary petition. Consequently, it remanded the case in order to allow her to file an answer so that the case might proceed to trial. Implicit in this action was the authorization to receive evidence at the trial in order to determine the merits of the case. Any other construction of the Seventh Circuit's decision is illogical since there would be little purpose in conducting a trial if the facts in the case had already been conclusively determined. This conclusion is supported by language in the decision. The Seventh Circuit stated that "[w]hat appellant terms 'a ruling on the merits' was in fact a ruling that appellant had not shown good cause for setting aside the default judgment." *Busick, supra,* 719 F.2d at 925. The bankruptcy court's denial of partial summary judgment based on the application of the law of the case is affirmed.

## II. 11 U.S.C. § 303

### A. 1984 Amendments

The statutory provision under which the creditors have proceeded is 11 U.S.C. § 303 (§ 303), which governs involuntary petitions in bankruptcy. This statute was amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 392 (1984) (1984 amendments), passed on July 10 of that

year. The case at bar was filed originally on February 14, 1980. Because the 1984 amendments made substantial changes to the law applicable to this case, it is crucial to its outcome whether the amendments apply.

Two subsections of § 303 are of central importance. The pre-amendment versions of these subsections read in part as follows:

(b) An involuntary case is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—

(1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability....

. . . . .

(h) If the petition is not timely controverted, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed. Otherwise, after trial, the court shall order relief against the debtor in an involuntary case under the chapter under which it was filed, only if—

(1) the debtor is generally not paying such debtor's debts as such debts become due....

Section 426(b) of the 1984 amendments made two relevant changes. First, 11 U.S.C. § 303(b)(1) was revised to read:

(1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability *or the subject on* [sic] *a bona fide dispute....*

(Emphasis added.) Second, 11 U.S.C. § 303(h)(1) was similarly revised:

(1) the debtor is generally not paying such debtor's debts as such debts become due *unless such debts that* [sic] *are the subject of a bona fide dispute....*

(Emphasis added.)

The effect of the amendments is to condition the granting of an involuntary petition on the absence of a bona fide dispute regarding the debts which form the basis of the petition, either in connection with the creditors' standing to bring an involuntary petition, or the question as to whether the debtor is generally paying debts as they come due. These amendments change the reasoning and result of a significant number of cases dealing with disputed claims. *In re Reid,* 773 F.2d 945, 947 (7th Cir.1985).

Thus, it becomes important to "scrutinize carefully" these amendments to determine whether they apply to this case. *Id.* at 946. The primary purpose of the Bankruptcy Amendments and Federal Judgeship Act of 1984 was to revamp comprehensively the bankruptcy court system to conform with constitutional requirements as outlined in *Northern Pipeline v. Marathon Pipeline Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). Consequently, there is little legislative history regarding the specific amendments to § 303. The proponent of these amendments, however, did explain his reasons for the additional language:

The problem can be explained simply. Some courts have interpreted section 303's language on a debtor's general failure to pay debts as allowing the filing of involuntary petitions and the granting of involuntary relief even when the debtor's reason for not paying is a legitimate and good-faith dispute over his or her liability. This interpretation allows creditors to use the Bankruptcy Code as a club against debtors who have bona fide questions about their liability, but who would rather pay up than suffer the stigma of involuntary bankruptcy proceedings.

My amendment would correct this problem. Under my amendment, the original filing of an involuntary petition could not be based on debts that are the subject of a good-faith dispute between the debtor and his or her creditors. In the same vein, the granting of an order for relief could not be premised solely on the failure of a debtor to pay debts that were legitimately contested as to liability or amount.

I believe this amendment, although a simple one, is necessary to protect the rights of debtors and to prevent misuse of the bankruptcy system as a tool of

coercion. I also believe it corrects a judicial misinterpretation of existing law and congressional intent as to the proper basis for granting involuntary relief.

130 Cong.Rec. S7618 (daily ed. June 19, 1984) (statement of Sen. Baucus).

These remarks not only provide helpful guidance as to the purpose of the substantive changes made to § 303, but also provide an overall context for determining the cases to which these amendments were intended to apply. The actual enactment provisions are found in § 553 of the 1984 Act. Subsection (a) provides that the amendments "shall become effective to cases filed 90 days after the date of enactment of this Act." Subsection (b) states that "[t]he amendments made by section 426(b) [amending 11 U.S.C. § 303] shall become effective upon the date of enactment of this Act." Subsection (c) refers to § 541(c) regarding bankruptcy and collective bargaining agreements, which reads:

(c) The amendments made by this section shall become effective upon the date of enactment of this Act; provided that this section shall not apply to cases filed under title 11 of the United States Code which were commenced prior to the date of enactment of this section.

■ Taken as a whole, these references to the 1984 Act and its legislative history strongly suggest that the amendments at issue in this case were intended to apply to cases pending on the date of enactment, July 10, 1984. Of the three parts of the legislation which discuss effective dates, two make specific reference to the filing date of cases. Presumably, if Congress had also intended the amendments to § 303 to apply only to cases filed on or after the date of passage, it would have said so explicitly. This conclusion is further supported by an extensive examination of this issue in *In re Stroop*, 47 B.R. 986 (D.Colo. 1985), which quoted with approval an excerpt from the Special Report to Bankruptcy Law Reports dealing with the 1984 Act, Special Report—Bankruptcy Amendments and Federal Judgeship Act, Bank.L.Rep. (CCH, July 16, 1984) ¶ 1203(b):

The amendments made by section 426(b) [to § 303] are to become effective upon the date of enactment of this Act. This accelerated effectiveness is designed to relieve in cases where no final order has been issued a perceived inequality in the law whereby creditors could file for involuntary bankruptcy relief even where the debtor's reason for not paying his debt is a bona fide dispute over his liability for the debt.

47 B.R. at 988.

The creditors argue that the amendments should not be applied in this case because, unlike *Stroop*, the trial herein occurred prior to the passage of the amendments. In their view, it would be unfair to impose a new statutory standard on the case that could not have been foreseen by the parties at the time the case was heard by the bankruptcy court. This argument is unpersuasive. When legislation applies to pending cases, it makes no difference at what level of the judiciary they may be; rather, a case is considered "pending" until all appeals have either been exhausted or abandoned. *See Bradley v. School Board of City of Richmond*, 416 U.S. 696, 714–15, 94 S.Ct. 2006, 2017–18, 40 L.Ed.2d 476 (1974); *Thorpe v. Housing Authority of City of Durham*, 393 U.S. 268, 281, 89 S.Ct. 518, 525, 21 L.Ed.2d 474 (1969).

Therefore, this court holds that the amendments to § 303 contained in the 1984 Act apply to this case, since it was pending on the date Congress passed them. This conclusion is supported by the underlying purpose of the amendments as expressed in the legislative history, the lack of a specific indication in the legislation as to the cases to which they would apply, and the approval given by the Supreme Court to the construction that such legislation applies to pending cases. *Bradley, supra*, 416 U.S. at 715, 94 S.Ct. at 2018.

While the bankruptcy court acknowledged the changes made by the 1984 amendments in its order dated April 5, 1985, it analyzed the case in terms of the pre-amendment law. It did not speak directly to the issue of the applicability of the

amendments to cases pending on the date of passage. In its order dated March 11, 1986, in response to Jane's motion to alter or amend, however, the bankruptcy court did discuss the issue. It stated that

Jane Busick's dispute of these debts appears bona fide; therefore, relief would be denied if this case were commenced today rather than in 1980. *In re Reid*, 773 F.2d 945 (7th cir.1985). The 1984 amendment to § 303(b)(1) applies to cases filed on or after the effective date of July 10, 1984. The amendment effects a substantive change in involuntary bankruptcy law. 2 King, Collier on Bankruptcy, ¶ 303 at 303–33, 36 (15th Ed.1985).

The bankruptcy court's citation to *Reid* is misleading. Rather than standing for the implied proposition set forth in the order that the 1984 amendments do not apply to pending cases, *Reid* merely noted that the new amendments applied to that case "[s]ince the involuntary petition in the present case was filed on July 13, 1984, three days after the amendment to section 303(b)(1) had taken effect...." *Reid, supra*, 773 F.2d at 946. This statement says nothing about the application of the amendments to cases pending on the date of passage. The failure to apply the 1984 amendments to this case was in error.

B. Application of 11 U.S.C. § 303 as Amended

Six creditors have brought this action for an involuntary petition against Jane. They allege the following claims, as summarized by the bankruptcy court:

a. Erie Haven, a cement firm, is owed $7533.62 for cement delivered in 1978 at the specific request of Leo Busick. The cement was poured to form a swimming pool at the entireties residence of Jane and her husband.

b. Northern Indiana Fuel & Light, a regulated utility, is owed $2018.82, for service contracted in late 1979 and early 1980, in the name of Jane's husband. The service was provided to entireties rental real estate held by Jane and her husband from which she financially bene-

fited. In the past, Jane had paid Northern Indiana's bills.

c. Amoco is owed $844.95 for fertilizer and herbicide, delivered to Jane's husband, in May, 1977, which was applied to the cultivation of crops on acreage held by the entireties and from the proceeds of which Jane benefited.

d. The Pages sold Leo and Jane Busick an entireties parcel of real estate in Michigan in October, 1977. When the Busicks' check for the down payment was returned "N.S.F.," and before the Pages could recover the property, $2800.00 worth of timber was removed.

e. Feuser is owed $2325.00 for building materials delivered to 4625 Fahlsing Road, Woodburn. Feuser believes the court will conclude from the evidence Jane was involved in a joint enterprise with her husband.

f. Old Fort is owed $2816.57 for building materials supplied to Leo Busick in 1978. Old Fort similarly believes the court will conclude from the evidence that Jane and her husband were involved in a joint venture, jointly obliging both to it.

The bankruptcy court did not analyze these facts in terms of the applicability of § 303(b), but rather focused on pre–1984 amendment cases in determining that the case should be considered pursuant to § 303(h). In so doing, the court stated that the creditors were holders of "noncontingent but disputed claims." Relying on the frequently-quoted *Matter of Covey*, 650 F.2d 877 (7th Cir.1981), the court held that these debts should be counted in determining whether Jane was generally paying her debts as they came due. As a result, it granted the involuntary petition.

This analysis is inappropriate in light of the 1984 amendments. The Seventh Circuit has had an opportunity to reevaluate *Covey* in light of the amendments in *In re Reid, supra*. There, the court noted that the test applied in *Covey* allowed a creditor to bring an involuntary petition even if the claim at issue was disputed. While it did not explicitly overrule *Covey* to the extent

that it conflicts with the 1984 amendments, it did state that since the amendments, "a creditor cannot bring a claim that is subject to a bona fide dispute." *Id.* at 947. In *Reid*, the Seventh Circuit found that a bona fide dispute existed where the debtor was alleged by the creditors to have commingled his assets with those of his insolvent corporation. Consequently, they lacked standing under § 303(b) to bring an involuntary petition. *Id.* at 947–48.

Other cases have attempted to formulate a new standard to determine whether a creditor has standing to bring a petition under § 303(b). In *In re Stroop*, 51 B.R. 210, 212 (D.Colo.1985), for example, the court fashioned this standard:

> If the defense of the alleged debtor to the claim of the petitioning creditor raises material issues of fact or law so that a summary judgment could not be rendered as a matter of law in favor of the creditor on a trial of the claim, the claim is subject to a bona fide dispute.

*See also In re Cates*, 62 B.R. 179, 181 (Bankr.S.D.Tex.1986) (adopting *Stroop* standard).

Another more detailed standard was set forth in *In re Johnston Hawks, Ltd.*, 49 B.R. 823, 831 (Bankr.D.Hawaii 1985). There, the court listed several factors to be considered:

1. The nature of the dispute;
2. The nature and the extent of the evidence and allegations presented in support of the creditor's claim and in support of the debtor's contrary claims.
3. Whether the creditor's claim and the debtor's contrary claims are made in good faith and without fraud or deceit.
4. Whether on the balance the interests of the creditor outweigh those of the debtor.

Both of these approaches were criticized in *In re Lough*, 57 B.R. 993, 996–97 (Bankr. E.D.Mich.1986). Regarding *Stroop*, the court noted that its approach did not account for the possibility of undisputed facts but substantial dispute as to the proper application of law. In such a case, the court would have to "resolve the question of law as if on a motion for summary judgment and simply determine whether the alleged debtor is liable to the creditor." 57 B.R. at 997. Similarly, the court found no basis in the amended statute for including *Johnston Hawk's* balancing factor. It likewise found fault with the subjective aspect inherent in determining the parties' good faith, fraud, or deceit. Rather, *Lough* concluded that Congress made no distinction between factual and legal disputes in adding the new language to § 303(b). As a result, "if there is either a genuine issue of material fact that bears upon the debtor's liability, or a meritorious contention as to the application of law to undisputed facts, then the petition must be dismissed." *Id.*

 In light of the demise of the *Covey* standard, questioned by the bankruptcy court, but implicitly acknowledged by the Seventh Circuit in *Reid*, this court finds the reasoning of *Lough* persuasive. The statute does not require the court to determine the outcome of any dispute, only its presence or absence. Only a limited analysis of the claims at issue is necessary. Therefore, the court adopts the standard set forth in *Lough:* a bona fide dispute as that term is used in §§ 303(b) and 303(h) refers to a genuine issue of material fact that bears upon the debtor's liability, or a meritorious contention as to the application of law to undisputed facts.

 The parties in this case argued both factual and legal errors. It is evident from the record, however, that there is really little dispute about the facts, certainly not enough to warrant a finding that the bankruptcy court's findings were clearly erroneous. Rather, the case turns on the identification of the proper legal standard and the application of the facts to it. Jane has raised substantial legal questions regarding each of the creditors' claims. These claims arose almost exclusively through the actions of Jane's husband, Leo. Any liability for these debts flowing to Jane

cannot be characterized as a foregone conclusion. Indeed, the creditors base their claims on theories of agency, quantum meruit, and joint venture. While their presentation of these theories in their arguments before the court presents a plausible case, Jane has raised substantial questions as to all of them.

The creditors have made much of the lack of good faith shown by Jane and her husband throughout these and related proceedings. Their good faith, however, is not at issue. The term "bona fide" as it appears in the statute refers only to a dispute, not the moral character of those involved in it. There is no question that the claims raised by the creditors herein are subject to bona fide disputes. The bankruptcy court's granting of the involuntary petition is REVERSED.