**In re Robert D. DOWNIE, Debtor.**

**Bankruptcy No. 89–00130.**

United States Bankruptcy Court,
N.D. Florida,
Gainesville Division.

Oct. 10, 1989.

Ronald Bergwerk, Jacksonville, Fla., for Florida Air.

Karen K. Specie, Gainesville, Fla., for debtor.

## ORDER ON ALLEGED DEBTOR'S MOTION TO DISMISS

LEWIS M. KILLIAN, Jr.,
Bankruptcy Judge.

On June 13, 1989, Florida Air Conditioners, Inc. (Florida Air), the petitioning creditor, filed an Involuntary Petition for relief under Chapter 7 of the Bankruptcy Code against Robert D. Downie pursuant to 11 U.S.C. § 303(a). The alleged debtor has filed a motion to dismiss based upon the theory that Florida Air's claim is subject to a bona fide dispute under § 303(b)(1) of the Bankruptcy Code and cannot serve as the basis for the petitioning creditor's filing of the Involuntary Petition.

The primary issue under consideration is whether the asserted claim of petitioner Florida Air is subject to a bona fide dispute. In order to understand the dispute, the history of the business dealings between Robert Downie and Florida Air is necessary. In April of 1982, Robert Downie began operating a business called Bob Downie Air Conditioning, a sole proprietorship. Robert Downie and his wife, Diana Downie, as principals, signed a credit agreement with Florida Air listing Robert Downie d/b/a Bob Downie Air Conditioning as dealer. The agreement, in part, states "[s]hould the purchaser be a **corporation** or **partnership** ... the undersigned ... agree that ... they are personally liable, jointly, and severally with the principal, as guarantor(s) for payment of all indebtedness or liabilities incurred pursuant to this agreement." (emphasis added)

From April of 1982 to March 3, 1983, Robert Downie operated the business as a sole proprietor. On March 3, 1983, Bob Downie Company, a Florida corporation, was formed. Robert Downie was and still is the president of Bob Downie Company. On November 1, 1983, Bob Downie Company entered into a floor plan finance agreement with Carrier Distribution Credit Corporation (CDCC). Bob Downie Company was supplied ventilating, air conditioning and other equipment by Florida Air on open account through floor plan financing provided by CDCC.

Prior to March 1987, Robert Downie owned 100% of Bob Downie Company. In March of 1987, Robert Downie sold 75% of the company to Oliver Leon Cason, James Mack Farber, and Charles Yount. In June 1987, upon learning that Bob Downie Air Conditioning was now Bob Downie Company and that Robert Downie was no longer controlling shareholder, Florida Air requested and received a new credit agreement with the Bob Downie Company, which included the personal guarantees of Cason, Farber, and Yount. This agreement contained slightly different credit terms than

the credit agreement signed by Robert and Diana Downie in 1982.

The transactions under scrutiny occurred between March 20, 1987, through July 25, 1988, in which Florida Air sold heating and air conditioning equipment to Bob Downie Company pursuant to financing provided by CDCC. When Bob Downie Company failed to pay CDCC, CDCC exercised its right to cause Florida Air to buy out any obligation owed by Bob Downie Company under the financing arrangement, and assigned the CDCC position to Florida Air. Florida Air brought suit in the Circuit Court for Pinellas County, Florida, Case no: 88–14361–17, and sought recovery of all amounts alleged to be due from Bob Downie Company. The creditor filed a four count complaint. The first three counts are against Bob Downie Company, a Florida corporation. The fourth count is against five alleged guarantors, including the alleged debtor, Robert Downie and his wife, Diana Downie.

After institution of this state court action, Bob Downie Company paid Florida Air $23,423.33 on its open account for goods purchased under the Florida Air credit terms, leaving a balance of $29,778.76 outstanding, plus interest, costs, finance charges and attorneys' fees. This remaining outstanding balance resulted from Florida Air's charge repurchase obligation with CDCC. In the state court litigation, both parties moved for summary judgment arguing that no genuine issues exist regarding any material fact. The plaintiff in that action, Florida Air, cancelled the hearing on its motion scheduled for May 19, 1989, and filed its involuntary petition on June 13, 1989.

Under the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 333, 369 (1984) Congress provided that creditors holding claims in "bona fide dispute" cannot be petitioning creditors. Since the legislative history does not define what constitutes a bona fide dispute, the courts have reached varying results as to when such a dispute exists regarding a particular claim.

The Court agrees with and adopts the test applied in *In re Busick*, 65 B.R. 630, 637–38 (N.D.Ind.1986), aff'd 831 F.2d 745, 749–50 (7th Cir.1987). The test does not require a decision on the resolution of any dispute, only a determination that the dispute exists. The court need only engage in a limited analysis of the claims at issue in order to determine whether there exists a genuine issue of material fact that bears upon the alleged debtor's liability, or a meritorious contention as to the application of law to undisputed facts. *In re Ramm Industries, Inc.*, 83 B.R. 815, 822 (Bankr. M.D.Fla.1988); *In re General Trading, Inc.*, 87 B.R. 216, 219 (Bankr.S.D.Fla.1988).

The creditor, Florida Air, argues that it sold goods to Bob Downie Company pursuant to the Florida Air credit agreement and therefore there is no bona fide dispute. Florida Air invoices the dealer, Bob Downie Company, for the goods sold. Florida Air then assigns the invoices to CDCC on a recourse basis. If the dealer (Bob Downie Company) fails to pay CDCC, Florida Air must pay CDCC. CDCC then assigns the delinquent account back to Florida Air for collection.

The alleged debtor argues that the debt upon which Florida Air bases its claim is a debt incurred pursuant to the CDCC financing agreement, not the Florida Air credit agreement on which Florida Air claims Robert Downie's alleged personal guarantee. The alleged debtor's position is that Bob Downie Company purchases materials from Florida Air with funds borrowed from CDCC to pay for these goods pursuant to an agreement between the Bob Downie Company and CDCC. The alleged debtor contends that the debt to Florida Air under the credit agreement was extinguished when the payment of $23,423.33 was applied to its open account with Florida Air. Furthermore, the alleged debtor contends that Robert Downie was liable under the Florida Air credit agreement as a principal, not as a guarantor. When Florida Air was notified that it was doing business with Bob Downie Company, a corporation, and that the controlling interest had been transferred from Robert Downie to Cason, Farber, and Yount, it secured a new credit

agreement with the Bob Downie Company which included slightly different credit terms and the personal guarantees of Cason, Farber, and Yount. At no time did Florida Air request Robert Downie to guarantee the account of the Bob Downie Company. Robert Downie states that since he gave up day-to-day control of the business he would not have guaranteed the debt of the Bob Downie Company had he been requested to do so.

There are legal issues raised concerning whether the credit agreement signed by Robert Downie covers the debt of the corporation, Bob Downie Company. At the time of the original credit agreement Robert Downie was a principal. There was no corporation in existence and no corporate debt to guarantee. The terms of the credit agreement indicate that if the purchaser is a corporation or a partnership, then the guarantors are personally liable. At the time of the execution of this credit agreement the dealer was listed as Robert D. Downie d/b/a Bob Downie Air Conditioning. It is clear that the purchaser was neither a corporation nor a partnership. When the Bob Downie Company was formed a new credit application, with slightly different credit terms and new principals as guarantors, was signed by Cason, Farber, and Yount.

This fact pattern of the instant case is distinguishable from *Frell v. Dumont–Florida, Inc.,* 114 So.2d 311 (Fla. 3rd DCA 1959). In *Frell* the guarantor was estopped from claiming the guaranty was rendered ineffective due to one of the partners of the principal-debtor withdrawing from the partnership. In *Frell* the guarantor participated in the name change, claimed profits in the new firm under the continuing guaranty, and at no time disclaimed responsibility under the guaranty until suit. In the instant case, Robert Downie informed Florida Air of its change from a sole proprietorship to a corporation and Florida Air sought and received a new credit agreement which included the guarantees of the individuals in charge of the day-to-day business operations of the Bob Downie Company.

In *Powell Manufacturing Company v. Maria Allbritton,* 513 So.2d 1348 (Fla. 1st DCA 1987), Maria Allbritton guaranteed the debt of her husband, a sole proprietor. Her husband then formed a partnership with another individual and the Court held that the nature of the principal had changed thereby voiding the personal guarantee. In that case Powell was made aware of the fact that the business had changed from a sole proprietorship to a partnership and continued to do business under the same terms. That case provided a stronger case for the creditor. The wife guaranteed the debt of her husband who was a sole proprietor. Her husband then went into partnership with another individual. The court held that the nature of the principal had changed thereby voiding her guarantee. In the instant case when Florida Air was informed of the change in the structure of the business from a sole proprietorship to a corporation, it secured a new credit agreement with the personal guarantees of Cason, Farber, and Yount as principals and slightly different credit terms. The original principal whose debt allegedly was guaranteed no longer remains liable as a principal. Under the rationale of *Allbritton,* the debtor makes a meritorious contention that the guarantee is not effective because Robert Downie was the principal, there was no corporate debt.

The alleged debtor also questions whether the debt that Florida Air is suing on was covered by Florida Air Credit agreement. The creditor argues that the debt it is suing on is incurred pursuant to the Florida Air credit agreement. When the dealer purchases the goods directly from Florida Air, Florida Air invoices those goods and then assigns those invoices to CDCC on a recourse basis. If the dealer fails to pay CDCC pursuant to the Floor Plan Agreement between the dealer and CDCC, Florida Air pays off CDCC. The account is then assigned back to Florida Air by CDCC, and the charges reappear on the Florida Air statements pursuant to the Florida Air credit agreement.

The language of the alleged guarantee limits it to credit transactions under the agreement. The alleged debtor argues

that the charge repurchase obligation from a third party is not equivalent to goods sold on credit. When the Bob Downie Company paid $23,423.33 on its open account with Florida Air the alleged debtor contends that this payment satisfied the debt owed to Florida Air incurred pursuant to that credit agreement. Since Florida Air has a repurchase obligation from CDCC, the alleged debtor argues that the Florida Air credit agreement, which Robert Downie signed as a principal, does not cover the remaining $29,778.33 which represents the charge repurchase obligation of Florida Air to CDCC.

This Court notes that Florida Air is not a party to the Floor Plan Security Agreement between Bob Downie Company and CDCC. The terms of the Floor Plan financing are significantly different than the terms of the Florida Air credit agreement between Florida Air and Robert Downie. Furthermore, the terms of this Floor Plan financing agreement do not contain provisions which allow the indebtedness of the Bob Downie Company to Florida Air to be assigned to CDCC on a recourse basis.

In a case with similar facts, the old Fifth Circuit Court of Appeals, interpreting Florida law, examined a contract by which the guarantor undertook payment of all accounts or other indebtedness arising out of the sale of merchandise by a carpet manufacturer to a purchaser and any other indebtedness "now or hereafter existing" between the manufacturer and the purchaser. The manufacturer agreed to take over resulting accounts receivable assigned from distributors. The Court held that the guaranty covered only indebtedness for carpeting purchased from the manufacturer and did not include accounts assigned to the manufacturer by distributors subsequent to the execution of the agreement. *Mohasco Industries, Inc. v. Maxwell Company, Inc.*, 425 F.2d 436 (5th Cir.1970). Under this rationale, the alleged debtor has raised a contention as to whether the credit agreement between Florida Air and Robert Downie applies to debts incurred to CDCC and then repurchased and assigned back to Florida Air.

Applying the *Busick* test to the claim of Florida Air, the Court concludes that the involuntary petition is improper since the claim of Florida Air is subject to a bona fide dispute. The evidence shows that Robert Downie and Florida Air have taken divergent positions with regard to the state court litigation and the claims therein and with regard to arguments before this Court on Alleged Debtor's Motion to Dismiss.

Mr. Downie has raised claims which, objectively considered, demonstrate that meritorious contentions as to the application of law exist under the undisputed facts regarding the alleged debtor's liability. Having determined that a bona fide dispute exists, this Court need not resolve it in order to dispose of the Involuntary Petition. *In re Nar–Jor Enterprises Corp.*, 6 B.R. 584 (Bankr.S.D.Fla.1980); *In re Ramm Industries, Inc.*, 83 B.R. 815 (Bankr.M.D.Fla.1988); *In re General Trading, Inc.*, 87 B.R. 216 (Bankr.S.D.Fla.1988).

The alleged debtor's motion to dismiss is granted. The Court reserves jurisdiction to consider the alleged debtor's motion for sanctions against Nancy and Steven Sobin and to consider any request made pursuant to 11 U.S.C. § 303(i).

DONE AND ORDERED.