In re AXL INDUSTRIES, INC., Debtor.

REMEX ELECTRONICS LIMITED, Appellant,

v.

AXL INDUSTRIES, INC., Appellee.

Bankruptcy No. 90–2252–CIV.

United States District Court, S.D. Florida.

May 20, 1991.

S. Alan Stanley, Douglas Stein, Miami, Fla., for Remex.

Marte Singerman, Miami, Fla., for Axl.

## ORDER AFFIRMING BANKRUPTCY COURT'S ORDER

MORENO, District Judge.

Appellant Remex Electronics Limited petitioned the Bankruptcy Court to have appellee Axl Industries, Inc. declared bankrupt. Axl filed a motion to dismiss the involuntary petition, which was denied without prejudice. Axl subsequently renewed the motion and an evidentiary hearing was held on the renewed motion. On August 16, 1990, after hearing testimony of several witnesses and argument of counsel, Judge Donald granted the motion dismissing Remex's petition pursuant to 11 U.S.C. §§ 305(a)(1), 303(b)(1), and (h)(1), finding that the best interests of the creditors and the debtor would be better served. The bankruptcy court also found that Remex had an adequate remedy for relief in non-bankruptcy forums:

### I.

Remex attacks Judge Donald's opinion on three grounds: the debt owed by Axl is not the subject of a bona fide dispute; Remex does not have an adequate remedy in a non-bankruptcy forum; and the best

interests of the creditors and the debtor would not be better served by dismissal. These contentions require consideration of the factual background set out in the findings of fact made by Judge Donald. Neither party disputes the findings of fact.

Remex is a Hong Kong corporation which manufactures watches and their component parts. Axl, formed in 1986, is a wholly-owned subsidiary of Bueche–Girod. Mel Axler is the sole shareholder of Bueche–Girod which is also in the business of importing and wholesaling watches. Axler is the president of both Axl and Bueche–Girod.

The Limited had done business with Remex through a different wholesaler prior to the time that Axl was formed. The Limited and Remex continued their direct relationship even after Axl began acting as the Limited's buyer and importer. Axl purchased watches from Remex and sold them to the Limited until May 1989, when the Limited informed Axl that certain watches were defective and would be returned. Axl denied that the goods were defective and filed suit against the Limited in the Southern District. The lawsuit, filed on July 12, 1989, is still pending.

After a meeting between Axl and Remex representatives, Remex agreed to wait for the payment of the monies due it by Axl until after the litigation between the Limited and Axl were resolved. Judge Donald expressly discounted Remex's attempts to deny that it had agreed to wait for payment from Axl until Axl concluded its litigation with the Limited.

Bueche–Girod has underwritten a number of Axl's debts since Axl's inception, including those incurred during the litigation with the Limited. In addition, Bueche–Girod also paid for Axl's administrative and overhead costs and then billed Axl for those costs and expenses attributable to Axl's operation. At the time of the bankruptcy trial, Axl was indebted to Remex in the amount of $237,763.08, and had financial obligations to Bueche–Girod in the amount of $195,000.

Remex alleges that certain payments made by Axl to its parent, Bueche–Girod, were within the one year period preceding the filing of the petition for involuntary bankruptcy, and therefore qualify as preferential transfers. Remex asserts that other payments which may qualify as preferential transfers were made. In late 1989, Axl resold to Marshall's watches which the Limited had deemed defective and returned. Remex had supplied about one half of those, a total of about $100,000. Instead of paying Remex, Axl paid Florida National Bank on behalf of Bueche–Girod.

Presently, Axl has ceased doing business. Its assets total approximately $20,000 in inventory of returned watches, and its lawsuit against the Limited, valued at over $1,000,000.

## II.

■ Generally, a court should not take jurisdiction over a two-party dispute, unless special circumstances exist. *7H Land and Cattle Corp.*, 6 B.R. 29 (Bankr.D.Nev. 1980). A single creditor may, under 11 U.S.C. § 303(h)(1), petition and establish involuntary bankruptcy where there are special circumstances amounting to fraud, trick, artifice or scam. *In re 7H Land and Cattle Co.*, 8 B.R. 22, 25 (Bankr.D.Nev. 1980).

■ In *In re Nar–Jor Enterprises Corp.*, 6 B.R. 584, 586 (Bankr.S.D.Fla. 1980), the court dismissed the case because the bankruptcy court was not designed or intended to be the forum for trying isolated disputed claims. Such a claim, standing alone, should not be the basis of an involuntary petition under § 303(h)(1). Allowing creditors to use the bankruptcy court as a routine collection device would quickly paralyze the court. *In re SBA Factors of Miami, Inc.*, 13 B.R. 99 (Bankr.S.D.Fla. 1981).

■ The bankruptcy courts generally grant motions to abstain in two-party disputes where the petitioner can obtain adequate relief in a non-bankruptcy forum. Courts consider the motivation of the petitioning creditor as a factor in making such a determination. It is not appropriate to

file an involuntary petition in an effort to gain control of the debtor's business.

◼ Another factor to be considered in determining the propriety of abstention is the assets of the debtor's estate. Courts have abstained where the only significant asset was a lawsuit. Since there was nothing to administer pending resolution of litigation, the court found that there was no estate of any significance. Dismissal without prejudice was therefore appropriate. *See In re Powers*, 35 B.R. 700 (Bankr.W.D. Mo.1984).

### III.

◼ Section 303 of the Bankruptcy Code provides that an involuntary petition must be commenced "by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute...." 11 U.S.C. § 303(b)(1). If the petition is timely controverted, after trial, the court shall order relief against the debtor in an involuntary case only if the debtor is generally not paying his debts as they come due, unless such unpaid debts are the subject of a bona fide dispute.

The yardstick used to determine the existence of a bona fide dispute has been assessed by numerous courts. Florida has adopted the measure set forth in *In re Busick*, 65 B.R. 630, 637–38 (N.D.Ind.1986), *aff'd* 831 F.2d 745 (7th Cir.1987). The *Busick* court found that if there is either a genuine issue of material fact that bears upon the debtor's liability, or a meritorious contention as to the application of law to undisputed facts, then, the petition must be dismissed. *See, e.g., In re General Trading, Inc.*, 87 B.R. 216 (Bankr.S.D.Fla.1988).

◼ The bankruptcy court then, is not required to determine the outcome of any dispute. Instead, the court is charged with determining whether the petitioning creditor's claims are the subject of a bona fide dispute. Judge Donald found that Remex knew and accepted that its payment was contingent upon Axl's recovery against the Limited. This factual finding is sufficient to render the Axl debt subject to a bona fide dispute. Remex's argument that, at most *payment* of the debt was contingent, not the debt itself, is irrelevant. The test is whether there is any legitimate basis for the debtor not paying a debt, whether that basis is factual or legal. *See, e.g., In re Garland Coal & Min. Co.*, 67 B.R. 514 (Bankr.W.D.Ark.1986).

Remex also asserts that it is entitled to bankruptcy relief because Axl has engaged in preferential transfers of a significant portion of its assets. The requirements for filing an avoidance action to set aside a preferential transfer are set forth in 11 U.S.C. § 547, and Fla.Stat. § 726.106(2). The Florida statutes add the requirement that an insider must have had reasonable cause to believe that the debtor was insolvent. This additional requirement does not provide a basis for relief in the instant case, as Judge Donald found that Bueche–Girod and Axl are closely allied.

Judge Donald, although not persuaded by Remex's arguments that Axl was guilty of preference activity, noted that the state courts' power to set aside fraudulent transfers defeat the petitioning creditor's allegations that such transfers existed.

◼ Finally, 11 U.S.C. § 305(a) requires consideration of the best interests of the debtor and the creditor prior to dismissing a petition for involuntary bankruptcy. Remex asserts that Judge Donald failed to consider any of the relevant criteria, which include: whether an arrangement is being worked out by the creditors and the debtor out of court, there is no prejudice to the rights of creditors in that arrangement, and an involuntary case has been commenced by a few recalcitrant creditors to provide a basis for future threats to extract full payment. Also important is the effect that a bankruptcy proceeding will have on the debtor's ongoing business. *In re Ceiling Fan Distrib., Inc.*, 37 B.R. 701, 703 (Bankr.M.D.La.1983).

Judge Donald found that: (1) this was a two-party dispute, (2) Remex had filed an involuntary petition to obtain control over Axl's litigation with the Limited, (3) Bueche–Girod is underwriting the litiga-

tion, (4) Remex has adequate state remedies, and (5) under *In re Powers*, 35 B.R. 700 (Bankr.W.D.Mo.1984), a bankruptcy court should not take jurisdiction over a debtor when the debtor's only significant asset is a state court lawsuit. Additionally, Axl has virtually ceased doing business and that there is no indication that Axl can engage in any further business. The interests of a defunct business enterprise would be little affected by the pendency of a bankruptcy proceeding.

Based on the foregoing, it is

ADJUDGED that the Memorandum Opinion and Order of Dismissal is AF-FIRMED in its entirety. The petition is DISMISSED.

DONE AND ORDERED.