**In re IMI ACQUISITION OF BOCA RATON CORPORATION, Alleged Debtor, IMI Acquisition of Pine Island Corporation, IMI Acquisition of North Miami Beach Corporation, IMI Acquisition of Orlando Corporation, PODC Acquisition Corporation, MD Acquisition Corporation, MD Ltd. Partner Acquisition Corporation and IMI Acquisition of Kansas Corporation.**

Bankruptcy Nos. 97–35262–BKC–SHF to 97–35268–BKC–SHF, 97–35280–BK–SHF.

United States Bankruptcy Court, S.D. Florida.

Jan. 7, 1998.

PODC Acquisition Corp., Plantation, FL, Pro se.

Joshua J. Angel, Angel & Frankel, P.C., New York City, for IMI Acquisition of Boca Raton Corp.

*ORDER GRANTING MOTION OF INVOLUNTARY DEBTORS TO DISMISS INVOLUNTARY CHAPTER 7 PETITIONS*

STEVEN H. FRIEDMAN, Bankruptcy Judge.

This cause came on to be heard by way of an evidentiary hearing on December

13, 1997 upon the motion of the seven alleged debtors [1] to dismiss the involuntary petitions filed against them by the various involuntary petitioners. Six of the seven involuntary petitions were filed by single corporate creditors, and the seventh involuntary petition was filed against MD Ltd. Partner Acquisition Corporation, by petitioners Stephen A. Schulman, M.D., James H. Sternberg, M.D., Stephanie S. Schulman and Marsha Sternberg. The pending cases were consolidated for administrative purposes by order dated November 25, 1997. At issue in all pending involuntary cases is a disagreement between the alleged debtors and the petitioning creditors, the principals of which include Drs. Stephen A. Schulman, James H. Sternberg and Ashley Kaye, concerning the payment of various obligations allegedly due the petitioning creditors. This Court, having carefully considered the argument of counsel together with the evidence adduced at the hearing, **grants** the motions to dismiss filed by the alleged debtors, and **dismisses** the involuntary petitions filed against the alleged debtors. Jurisdiction is reserved to consider the pending request of the alleged debtors for awards of attorneys' fees and punitive damages under 11 U.S.C. § 303(i) against the petitioning creditors.

The impetus for the filing of the involuntary petitions is the desire of the petitioning creditors, or their principals, to obtain payment of various obligations allegedly due to them arising from a September, 1994 transaction. By way of the 1994 transaction, ownership and control of several limited partnerships engaged in the business of providing magnetic resolution imaging and other medical services related to the field of radiology was transferred to International Magnetic Imaging, Inc. ("IMI Delaware"). The limited partnerships, which were owned or controlled by Dr. Stephen A. Schulman and his wife, Dr. James H. Sternberg and his wife, and Dr. Ashley Kaye ("Schulman Group"), owned and operated centers to perform diagnostic imaging procedures in Florida, Kansas, Virginia, and Puerto Rico.

In 1994, largely due to changes in Medicare laws, the three doctors and their limited partners agreed to sell their business to Consolidated Technology Group, Ltd. ("CTG"), a public company headquartered in New York City, of which the chairman and chief executive officer is Lewis Schiller. The business was purchased through a wholly-owned subsidiary of CTG, SIS Capital Corp., of which the chairman and chief executive officer is also Mr. Schiller. The purchase price for the business was $30.6 million, which was to be paid as follows:

| | |
|---|---|
| Cash | $ 7.0 million |
| Subordinated notes | 20.7 million |
| Common Stock of CTG | 2.9 million |

The $7.0 million in cash was furnished by DVI Financial Services, Inc. ("DVI"), an institutional lender, and the $20.7 million in subordinated notes and $2.9 million in CTG stock were issued to various individuals and entities. It appears that some promissory notes were issued to limited partners that have since been repaid. Also, promissory notes were issued to corporate entities which are owned and controlled by the Schulman Group, and promissory notes were issued directly in the names of Drs. Schulman, Sternberg and Kaye and/or their wives. The subordinated promissory notes were to be paid concommitently with the DVI indebtedness, and the subordinated promissory notes are payable in full in September, 1997.

Thereafter, it became necessary for the alleged debtors to re-finance their obligations due to DVI, in order to satisfy certain obligations due to limited partners of the alleged debtors which had become due. The alleged debtors [2] executed a second loan agreement with DVI in December, 1995, through which the additional funds were procured to satisfy the indebtedness then due to the limited partners. Under the 1995 DVI loan agreement, the alleged debtors borrowed a total of

---

**1.** The petitioning creditors voluntarily dismissed the involuntary petition filed against an eighth involuntary debtor, IMI Acquisition of Kansas Corporation, at the commencement of the hearing on this matter.

**2.** Actually, the loan agreement was executed by the various limited partnerships operating under the International Magnetic Imaging, Inc. umbrella, with the corporate general partners of the limited partnerships executing the loan agreement as guarantors.

$12 million in late 1995 and early 1996 to retire limited partnership notes. However, DVI required, as a condition of the December, 1995 loan, that the alleged debtors defer further payments on the subordinated notes until the indebtedness due to DVI had been satisfied. The DVI loan remains outstanding, and no payments have been made on the subordinated promissory notes since November, 1995.

In each of the seven pending involuntary petitions commencing these cases, the involuntary petitioners consist of corporate entities which hold subordinated promissory notes due by the alleged debtors.[3] The petitioning creditors contend that the subordinated promissory notes owed to them matured in September, 1997, and thus are due and payable in full. The alleged debtors respond by asserting that, pursuant to the December, 1995 DVI loan agreement, to which the petitioning creditors acceded, the subordinated notes cannot be paid, and therefore are not "due", until the DVI indebtedness has been paid in full. Indeed, in paragraph 4(b)(ii) of the September 30, 1994 promissory notes executed in favor of the subordinated note holders, it is stipulated:

> Upon the happening of an event of default (or an event which, with the passage of time and/or the giving of notice would result in an event of default) with respect to any Senior Indebtedness, as such event of default is defined in any instrument under which such Senior Indebtedness is outstanding, then, unless and until such event of default or such other event shall have been cured or waived or shall have ceased to exist, no payment shall be made by Maker with respect to the Principal or interest on this Note, or to acquire this Note.

The subordinated note holders, by their acceptance of the various promissory notes executed by the alleged debtors, acquiesced to the subordination in payment of their obligations to payment of the DVI indebtedness. While it is undisputed that, subsequent to September 30, 1994 leveraged buy-out, the alleged debtors were permitted to service the debt due to the subordinated note holders and in fact did do so, such debt service was expressly prohibited by the December 29, 1995 loan agreement between the alleged debtors and DVI. Thereafter, in mid–1996, Allan Velotta, vice-president of DVI, reiterated to Dr. Schulman that no further payments on the subordinated indebtedness would be allowed until DVI was paid in full. Consistent with these discussions, no payments have been made to the subordinated note holders since at least late 1995.

■ Pursuant to 11 U.S.C. § 303(h)(1), the Court is to grant relief in favor of involuntary petitioners if a debtor is generally not paying its debts as they become due, "... unless such debts are the subject of a bona fide dispute". The alleged debtors insist that such a dispute does exists, and this Court concurs. As noted in the case of *In re Axl Industries, Inc.*, 127 B.R. 482, 485 (S.D.Fla. 1991):

> The yardstick used to determine the existence of a bona fide dispute has been assessed by numerous courts. Florida has adopted the measure set forth in *In re Busick*, 65 B.R. 630, 637–638 (N.D.Ind. 1986), *aff'd* 831 F.2d 745 (7th Cir.1987). The *Busick* court found that if there is either a genuine issue of material fact that bears upon the debtor's liability, or a meritorious contention as to the application of law to undisputed facts, then, the petition must be dismissed.

There is no genuine issue of material fact that would bear upon the liability of the alleged debtors, as by the clear terms of each of the subordinated promissory notes, these notes became due in full on September 15, 1997. In addition, the alleged debtors have not raised any defenses disputing their obligation to pay the subordinated promissory notes. However, the alleged debtors have raised a meritorious contention as to the application of law to undisputed facts, in that the alleged debtors assert, as a matter of law, that the subordinated promissory notes cannot be paid under their own terms, and under the terms of the December 29, 1995 DVI–IMI loan agreement, until and unless

---

**3.** The sole exception to the foregoing is the case filed against MD Ltd. Partner Acquisition Corpo-

ration, as to which case the involuntary petitioners of the Schulman Group and their wives.

the obligation owed by IMI Delaware to DVI, has been paid in full. Thus, the disputed issue is one of contractual interpretation, which under the circumstances should be adjudicated in a non-bankruptcy forum. As noted in the case of *In re Lough,* 57 B.R. 993, 997 (Bankr.E.D.Mich.1986):

> ... given the previously quoted legislative history (citation omitted), if there is a bona fide dispute as to either the law or the facts, then the creditor does not qualify and the petition must be dismissed. The legislative history makes it clear that Congress intended to disqualify a creditor whenever there is any legitimate basis for the debtor not paying the debt, whether that basis is factual or legal. Congress plainly did not intend to require a debtor to pay a legitimately disputed debt simply to avoid the stigma of bankruptcy.

Based upon the foregoing, the Court finds that the claims of all of the petitioning creditors constitute claims which are the subject of bona fide disputes. Thus, the involuntary petitions filed against the involuntary debtors must be dismissed. Accordingly, it is hereby

**ORDERED** that the motion to dismiss filed by the alleged debtors is **granted,** and these jointly administered cases are **dismissed.** Upon the filing of appropriate motion(s), the Court shall consider requests for awards of attorneys' fees and expenses pursuant to 11 U.S.C. § 303(i).