STATE of Tennessee ex rel. WASHINGTON INDUSTRIES, INC., et al.

v.

J. C. SHACKLETT et al.

Supreme Court of Tennessee.

July 15, 1974.

Walter S. Clark, Jr., Nashville, for appellants.

W. W. Berry, Charles K. Wray, Nashville, for appellees.

## OPINION

McCANLESS, Justice.

This case requires construction of a section of the Tennessee General Corporation Act, specifically Section 48–708(2), T.C.A. The issue for determination is whether a parent corporation which holds the majority common stock in its subsidiary can vote that stock as a corporate shareholder to elect the subsidiary's board of directors, even though the five directors of the parent are the same individuals who comprise five of the six directors of the subsidiary.

This case arose over the election of the board of directors of the subsidiary, Washington Manufacturing Company, at its annual stockholder's meeting on February 13, 1973. Washington Manufacturing Company has 4,000 outstanding shares of common stock. The controlling interests are in the corporations two parent firms, Washington Industries, Inc., which owns 2,711 shares and Merchants Warehouse Company, which owns 869 shares. The remaining 420 shares are held by six minority shareholders.

The board of directors of Washington Manufacturing Company, at the time of the stockholders meeting, included T. W. Comer, E. H. Hatcher, B. Hatfield, R. Hix Clark, Paul Hargis, and J. C. Shacklett. The first five of these individuals also comprised five of the seven directors of each of the parent corporations, Washington Industries and Merchants Warehouse.

At the stockholders meeting to elect new directors, the right of the majority stockholder, Washington Industries, to vote its shares was challenged on the basis of Section 48–708, T.C.A., subsection (2), which provides:

"A corporation for profit may not vote at any meeting any treasury shares or any other of its shares which it owns or controls, directly or indirectly, and no such shares shall be counted in determining the total number of the outstanding shares of the corporation at any given time."

The theory of the challenge by the minority stockholders is based on analogy, because in fact Washington Manufacturing Company was not voting *any* share for the election of its own directors—neither treasury shares nor any of its shares which it owned or controlled in any way. The theory was that, since the board of directors of Washington Manufacturing Company was virtually the same as that of the parent, Washington Industries, the board of the subsidiary controlled the vote of its parent and thus in effect voted the majority stock itself. In short, allowing the 2,711 shares to be voted by Washington Industries would be permitting a violation by Washington Manufacturing Company of the statute which prohibits a corporation from voting shares which it *controls indirectly.*

T. W. Comer, chairman of the meeting, heard arguments on both sides of this question and ruled that the statute barred both parent corporations from voting their shares. Thus, the new board was elected by the six minority shareholders on the basis of their 420 shares, and included Comer, Hatcher, Hatfield, Clark, and Hargis, who were all on the previous board, plus Jack S. Dugger, Jr., Jack S. Dugger, Sr., and Jean Forrester Dugger. The majority stockholders, the two parent corporations, held an election over the chairman's ruling and elected Comer, Hatfield, Clark, Hargis, E. M. Shepherd, Paschall Young, and Jack S. Dugger, Jr.

The meeting of the new board was recessed for sixty days until April 14, 1973. On April 13, 1973, the plaintiff-appellees filed suit in the Chancery Court of Davidson County, praying that the seven individuals elected by the majority stockholders be declared the official board, and seeking to enjoin the board elected by the minority stockholders from claiming to be or attempting to act as directors of Washington Manufacturing Company. The action was brought by the State of Tennessee on relation of Washington Industries and certain of its directors, and by Washington Industries on its own behalf and the individual directors on their behalf. The defendants were J. C. Shacklett, E. H. Hatcher, Jack S. Dugger, Sr., and Jean Forrester Dugger. The Chancellor issued a temporary restraining order, and heard the case on January 8, 1974, on the pleadings and exhibits, on the stipulation of all the facts, and on the argument of counsel. He ruled that the stock of the two parent corporations was not controlled by the subsidiary, but in fact was in the sole control of the parent companies themselves and their stockholders. He thus held that the action barring their votes at the stockholders meeting was illegal and erroneous. The Chancellor denied defendants' petition for rehearing, and the defendants have now perfected this appeal.

ing power of corporate shareholders is that urged by the appellants in Section 48–708

The general rule is that a corporation which holds stock in another corporation, and which has authority to do so under its charter, is entitled to vote the stock to the same extent as any other stockholder, e. g., 5 Fletcher, Cyclopedia Corporations, Section 2040 at 194 [1967]. That power is recognized in Tennessee in Section 48–402, T.C.A., which sets forth the powers specifically granted to private corporations in this State. Among these powers is that granted in sub-section (h):

*"Subject to such limitations, if any, as may be contained in the charter,* to purchase, take, receive, subscribe for or otherwise acquire, own, hold, *vote,* employ, sell, lend, lease, exchange, transfer, or otherwise dispose of, mortgage, pledge, use and otherwise deal in and with bonds and other obligations, *shares* or other securities or interests *issued by others,* whether engaged in similar or different business activities, governmental or other activities;" (emphasis added.)

In accordance with this statutory power, then, we must assume preliminarily that the appellee corporation, Washington Industries, regardless of its parent-subsidiary relationship with Washington Manufacturing Company, could vote the stock which it held in that corporation.

That right is subject to certain limitations, including that found in that statute itself. However, in this case we are precluded from considering any limitations in the corporate charter since that document is not in the record.

Another potential restriction on the voting power of corporate shareholders is that (2), T.C.A., supra. That section prohibits a corporation from voting any of its own shares, whether they be treasury shares, shares which it owns directly or indirectly, or shares which it controls directly or indirectly.

This statute can be applied to both Washington Industries and to Washington Manufacturing Company. As to Washington Industries, the parent firm, there is no issue. It was not voting ,Washington

Industries stock in any form, neither as treasury shares nor any other of its own shares which it owned or controlled. Washington Industries was voting shares which it owned in another corporation, Washington Manufacturing Company, which it had a right to do under Sections 48-402(h) and 48-708(2), T.C.A.

The question then becomes, what application does Section 48-708(2) have to Washington Manufacturing Company? On its face, it does not apply. The statute refers to corporations which are voting their own stock, and in this case it appears that Washington Industries, not Washington Manufacturing Company, is casting the votes. At least it is certain that Washington Manufacturing Company is not voting, in its own election, any treasury shares or other of its shares which it owns, either directly or indirectly.

The argument made by the appellants, however, is that in effect Washington Manufacturing Company would be voting its own shares which it *controls indirectly* if the shares owned by Washington Industries were allowed to be voted. The reason asserted is that the board of directors of Washington Industries is voting the shares; the directors of Washington Manufacturing Company are the same as those who are voting for Washington Industries; therefore, the directors are voting their own shares in their own election, creating a situation in which the five directors in question can perpetuate their control of the two corporations.

Appellants' reliance is on the landmark case of Italo Petroleum Corp. v. Producers Oil Corp., 20 Del.Ch. 283, 174 A. 276 [1934]. In that case it was held that a statute with wording substantially similar to our 48-708(2) barred a subsidiary from voting shares it owned in the parent firm for purposes of electing a board of directors for the parent firm. The reasoning of the Chancellor in that case reveals several major distinctions which preclude the *Italo* case as conclusive authority here.

First, the Chancellor noted that the parent corporation at all pertinent times considered the shares held by the subsidiary as its own treasury shares, and even carried those shares on its books as treasury shares. Id., 174 A. 276, 279.

Second, the record revealed other actions by the incumbent board of the parent corporation which revealed a fraudulent conspiracy to retain control in themselves. The Chancellor pointedly stated in the opinion that his ruling was based on the cumulative effect of all the actions taken together. That is, he did not rule that the fact of cross ownership alone would be conclusive as to whether the purposes of the directors were improper. Id. at 281.

And third, in the *Italo* case, there was mutual ownership which allowed "circular" voting. There, the parent owned ninety-nine per cent of the subsidiary's stock, and the subsidiary owned 135,009 of the parent's 468,063 issued shares of common stock. In this case, the parent owned a large percentage of the subsidiary's shares, but the record discloses no corresponding ownership of shares in the parent corporation by the subsidiary. It thus appears that the circular voting scheme that existed in *Italo* could be broken here, because the stockholders of the parent, Washington Industries, could elect a new board and avoid perpetuation.

In our opinion, the legislative purpose of Section 48-708(2) is not violated by the facts in this case, and we affirm the judgment of the Chancellor. To hold otherwise would be to grant absolute voting rights to six individual shareholders who among them hold only 420 shares, or roughly ten per cent of the total number of issued common stock. Section 48-402(h) raises a strong presumption in favor of the voting of shares by Washington Industries and we think the appellants have not presented a conclusive rebuttal.

We affirm the decree of the Chancellor.

DYER, C. J., CHATTIN and FONES, JJ., and LEECH, Special Justice, concur.