**In re PENNY SAVER, INC. t/a Trudy's Deli, Debtor.**

**Bankruptcy No. 80–03387T(7).**

United States Bankruptcy Court, E. D. Pennsylvania.

Nov. 16, 1981.

Harry Newman, Newman, Fox & Parks, Bethlehem, Pa., for debtor.

Nathan L. Reibman, Reibman & Reibman, Easton, Pa., for Dennis'.

1. The opinion constitutes the findings of fact and conclusions of law as required by Rule 752 of the Rules of Bankruptcy Procedure.

## OPINION

THOMAS M. TWARDOWSKI, Bankruptcy Judge.

Before us in this matter is a motion by a party in interest to vacate the order for relief and to dismiss the voluntarily filed petition. The party in interest claims that the debtor's president was without authority to file the voluntary petition on behalf of the debtor. For reasons hereinafter given, we will deny the motion.[1]

The facts of this case are as follows:

Richard and Penelope Dennis (hereinafter, the Dennis') were the owners of all the shares of Penny Saver, Inc., a small business whose sole activity was the operation of a gas station and convenience store. In the fall of 1979, the Dennis' entered into negotiations with John and Trudy Groller (hereinafter, the Grollers) for the sale of Penny Saver, Inc., from the Dennis' to the Grollers.

Initially, the parties entered into a franchise agreement whereby Grollers would pay a monthly rate to the Dennis' for the right to operate the business. This relationship was apparently intended to give the Grollers an opportunity to inspect the operation of the business firsthand. Evidently the Grollers liked what they saw, as they entered an agreement to purchase the shares of Penny Saver, Inc. a month and a half after entering the franchise agreement. This agreement was apparently intended to supercede the franchise agreement.

Because the Dennis' had loaned large sums of money to Penny Saver while they owned the shares,[2] they were advised by counsel after the execution of the agreement of sale that considerable tax savings could be achieved if the purchase was restructured. Therefore, a third agreement, superceding the franchise agreement and

2. As consideration for this loan to Penny Saver, the Dennis' received a promissory note from Penny Saver, and took a security interest in all of Penny Saver's assets.

the first agreement of sale, was drawn up by the Dennis' counsel, and executed by the parties in early 1980. The agreement of sale was written to be effective as of October 15, 1979, and provided that the Grollers would pay for the shares in monthly installment payments, and the Dennis' shares of Penny Saver would be transferred to the Grollers, but held in escrow by Dennis' attorney.

The agreement of sale provided for a purchase price of $24,476, plus 9% interest, to be paid in 36 installments. The buyers executed a note evidencing the debt, and the debt was allegedly secured by a security interest in all present and future assets of the corporation. In addition, it appears that the Grollers agreed to personally guarantee the repayment of the corporate loan made by the Dennis' in the amount of $54,524, at 9% interest in 36 monthly payments. Thus, in order to own Penny Saver, Inc. free and clear, the Grollers undertook to purchase all the outstanding capital stock for a price of approximately $25,000, and to pay off the corporate debt to Dennis at the sum of approximately $55,000. The default provisions of the agreement of sale provided that should the buyers default in their payments, the shares held in escrow would be returned to the Dennis', and all sums paid would be retained by the Dennis' as liquidated damages.

Following the execution of the agreement of sale, the Grollers, now sole shareholders, held a meeting and elected themselves officers of Penny Saver. It is not clear whether they were ever nominated or elected to the Board of Directors.

The Grollers continued their operation of Penny Saver, but almost immediately began experiencing financial difficulties. Mr. Dennis became increasingly annoyed with missed payments, and eventually tendered a document to Mrs. Groller which would have admitted the Groller's default under the agreement. Mrs. Groller refused to sign

the document, but instead closed the doors of the convenience store and returned the keys to Dennis. Thereafter, the Dennis' began execution on the personal property of Penny Saver, though it is not clear if the execution was pursuant to the confession of judgment contained in the note securing the obligation for the purchase of stock, or for the loan to Penny Saver. A sheriff's sale was scheduled for December 22, 1980.[3] On December 22, 1980, the Grollers filed a petition on behalf of Penny Saver seeking relief under Chapter 7 of the Bankruptcy Code. In the petition, Trudy Groller, as president of Penny Saver, alleged that the petition was filed in accordance with authority granted to her.

On March 4, 1981, the Dennis' filed a motion to vacate the order for relief and dismiss the petition on the grounds that Groller had no authority to file the petition on behalf of Penny Saver, Inc. A hearing was held on the motion to dismiss on April 29, 1981. At that time we heard testimony and admitted documentary evidence with regard to the motion. Briefs were filed in due course.

It has long been held that the president of a corporation cannot, without authority or ratification of the board of directors, institute voluntary bankruptcy proceedings against his corporation. *In re Farrell Realty Co.,* 10 F.2d 612 (W.D.Pa.1925); *In re Al-Wyn Food Distributors Inc.,* 8 B.R. 42, 7 B.C.D. 126, (M.D.Fla.1980). That narrow issue, whether the board of directors authorized Groller to file a voluntary petition on behalf of Penny Saver, Inc., should have been the focus of the evidence presented at the hearing on this motion.

The Dennis' however, sought to portray this as a simple contract case. The evidence they presented tended to prove that, indeed, the Grollers' had defaulted on the agreement of sale, thereby forfeiting the shares of stock held in escrow by the Dennis' attorney. Their view of the case seems

---

**3.** Despite the filing of the petition by Groller, the sale of Penny Saver's assets was held, and they were purchased by Dennis. Although we heard some testimony as to the circumstances surrounding the timing of the filing the petition *vis a vis* the sheriff's sale, we leave the question of violation of the automatic stay until it is properly before us.

to be that once the Grollers had defaulted on the purchase of the shares of stock, they no longer had any interest in Penny Saver, and were therefore in no way authorized to speak for the corporation.

The Grollers, on the other hand, attempted to show that there was not in fact a default, or that it was caused by the overreaching of Dennis' and their counsel, and further, that the escrow provision of the agreement of sale was defective, in that it failed to create a valid escrow. They also assert that Grollers remain in control of Penny Saver as sole shareholders.

Both of these positions fail to meet the issue squarely. However, the facts which we have culled from the testimony and evidence presented lead us to the following conclusions:

First, we believe the party objecting to filing of the petition, as any moving party in civil litigation, has the burden of proving its objections. Here, the Dennis' have the burden of proving that Groller did not act with authority of the board of directors when she filed a voluntary petition in bankruptcy.

The Dennis' have presented no testimony or other evidence to prove that the board of directors did not authorize or ratify the act of Mrs. Groller. In fact, we have no evidence from either party to suggest that either the Dennis' or the Grollers have elected directors.

Further, we find that the Dennis' have presented no evidence that Mrs. Groller was not duly employed as president of Penny Saver, Inc., nor that she did not at the time of filing, nor does not now, properly hold that office. To the contrary, the evidence presented by the Grollers tended to prove that they remain not only as officers of the corporation, but also as the shareholders of record of Penny Saver, Inc.

In the absence of convincing evidence to the contrary we must conclude that Groller was authorized to file a voluntary petition in bankruptcy for Penny Saver, Inc. For that reason, we will deny the Dennis' motion to vacate the order for relief.