**In re ARKCO PROPERTIES, INC.**

**Bankruptcy No. 96–20371 S.**

United States Bankruptcy Court,
E.D. Arkansas,
Helena Division.

March 31, 1997.

Susan Gunter, for Petitioner.

Allen Bird, for Respondent.

## ORDER OF DISMISSAL

MARY D. SCOTT, Bankruptcy Judge.

On December 24, 1996, eight related debtors filed for protection under Chapter 11 of the Bankruptcy Code. The debtors include Arkco Corporation, Inc. ("Arkco") which is the 100% shareholder of the other seven debtors. A fifty percent shareholder of the debtor Arkco has filed a motion to dismiss each of the cases as being filed in bad faith and as being filed without the proper authority. Inasmuch as trial of the issue regarding authority would involve significantly fewer resources, the Court bifurcated the issues and now grants the Emergency Motion to Dismiss, filed on December 31, 1996.

In April 1987, Gregory Graham and W.T. Paine incorporated W.T.P., Inc., with W.T. Paine holding 100% percent of the shares of the company. The name of this corporation was changed on September 18, 1992, to Arkco Corporation, Inc. At that time, the number of directors for each of the corporations was also changed from one, W.T. Paine, to two, W.T. Paine and Garland Ridenour. Garland Ridenour was elected President of each of the eight corporations[1] and became a 50% shareholder of Arkco.

On April 12, 1994, at its annual meeting of shareholders, Arkco Corporation elected Garland Ridenour, Ann Lewis, and Wayne Crews as directors of each of the subsidiaries. The shareholders of Arkco met, and, although meetings were noticed and rescheduled over the next several months, no elec-

---

1. Through 1993, the corporate history of most of the corporations is similar, with minor differences not relevant to the determination of this action. For example, seven of the eight corporations were incorporated prior to 1987; Arkco Properties, Inc. was not incorporated until 1991.

tions of directors were concluded by the shareholders. By Order of the state court, effective September 2, 1994, W.T. Paine was removed as a director of Arkco for a period of 18 months. On September 23, 1994, as the sole remaining director, Ridenour nominated and elected Wayne Crews to fill the unexpired term of W.T. Paine. The directors then elected Ridenour as Chairman of the Board and president of Arkco. On September 23, 1994, the shareholders of Arkco, W.T. Paine and Ridenour, elected directors for Arkco, namely Ridenour and Wayne Crews.

On April 10, 1995, numerous events occurred. First, at 2:30 p.m. each of the subsidiaries held a board meeting at which several resolutions were passed granting broad authority to Ridenour, as president, to "deal with" claims of W.T. Paine and to direct litigation involving the corporations. At the conclusion of the meeting of the board of directors, Ridenour accepted the resignation of the other two board members of the subsidiaries, Ann Lewis and Wayne Crews.

At 4:00 p.m. Ridenour called the meeting of the shareholder of the subsidiaries whereupon Ridenour took several actions purportedly under his authority as president. As president of the subsidiaries, he gave notice of a shareholder meeting to the sole shareholder, Arkco. As president of Arkco, he waived all notice requirements of the annual shareholder meeting; ratified all actions of the board taken within the last year; amended the bylaws, changing the number of directors from three to one; and, finally, unanimously elected himself as the sole director.

At 4:30 p.m. Ridenour called a meeting of the Board of Directors of each of the subsidiaries.[2] As the sole director he waived notice and elected himself president of each of the subsidiaries and elected Ann Lewis as Secretary.

On April 10, 1995, the Board of Directors of Arkco Corporation, then made up of Ridenour and Crews, also met, but earlier, at 2:00 p.m. At the conclusion of this meeting, Crews resigned as a director. Accordingly, a shareholder meeting was noticed for April 11, 1995, to, among other matters, elect new

directors of Arkco. It does not appear that the meeting took place as scheduled. On April 28, 1995, however, the shareholders of Arkco elected as directors, Ridenour and Jimmie Paine. At the meeting of directors held immediately after the shareholder meeting, the directors each nominated and voted for themselves as president, and, accordingly were unable to elect a president. Thereafter, although Ridenour asserted control as "holder over" president, he blacked out his presidential title on the letterhead.

On December 20, 1996, Arkco and its counsel learned that the state court intended to enter judgment against Arkco and its subsidiaries in an amount in excess of two million dollars. The state court findings of fact and conclusions of law were filed on December 23, 1996. Accordingly, on December 23, 1996, Ridenour noticed a meeting of the shareholders, to be held on December 26, 1996, in hopes of obtaining authorization to file bankruptcy petitions for each corporation. On December 24, 1996, however, each of the corporations filed a skeletal Chapter 11 bankruptcy petition. Although the corporate records for each of the seven subsidiaries of Arkco Corporation reflect that on December 24, 1996, Garland Ridenour was acting under the purported authority as the sole director of each of the subsidiaries in authorizing the filing of a bankruptcy case, Ridenour admits that these documents did not, in fact exist when the bankruptcy cases were filed. Ridenour claims that he gave Jimmie Paine notice of the meeting for the 26th as a "courtesy." He did not, however, wait for the meeting to obtain the requisite corporate authority and, instead, authorized the filings two days earlier. The Court does not believe his explanation that he did not expect Mrs. Paine to appear at the meeting. Not only had he been expressly advised she would attend, the acrimonious history of the parties, together with the nature of the business of the meeting, made her attendance a certainty.

2. Under the by-laws of the subsidiaries, the annual meeting of a newly elected Board is held without further notice immediately following the annual meeting of shareholders.

■ On December 26, 1996, a meeting of the Arkco board of directors was held at which time a motion that authorization for the filing of a bankruptcy case by Arkco be ratified failed.[3] It is noteworthy that Ridenour went forward with the meeting noticed for December 26, 1996, and attempted to have his conduct ratified. Clearly, he knew the filings were unauthorized in the first instance.

Arkco and its seven subsidiaries are governed by the Arkansas Business Corporation Act of 1987 pursuant to their Articles of Incorporation, as amended. The Bylaws of each of the corporations provide in pertinent part:

3.01. Management. The business and affairs of the Corporation shall be managed by the Board of Directors who may exercise all such powers of the Corporation and do all such lawful acts and things as are not (by statute or by the articles of Incorporation or by these Bylaws) directed or required to be exercised or done by its shareholders.

5.01. (c) Officers named in Bylaw 5.01(a)(1) shall be elected by the Board of Directors on the expiration of an officer's term or whenever a vacancy exists. Officers and agents named in Bylaw 5.01(a)(2) may be elected by the Board at any meeting, whether regular or special.

(d) Unless otherwise specified by the Board at the time of his election or appointment, or in an employment contract approved by the Board, each officer's and agent's term shall end at the first meeting of Directors after the next annual meeting of shareholders. He shall serve until the end of his term or, if earlier, his death, resignation, or removal.

5.03. Vacancies. Any vacancy occurring in any office of the Corporation (by death, resignation, removal or otherwise) may be filled by the Board of Directors.

5.04. Authority. Officers and agents shall have such authority and perform such duties in the management by the Corporation as are provided in the Bylaws or as

may be determined by resolution of the Board of Directors not inconsistent with these bylaws.

5.07. The President shall be the chief executive officer of the Corporation; shall preside at all meetings of the shareholders and, if the Chairman of the Board is absent, the Board of Directors; shall have general and active management of the business and affairs of the Corporation; and shall see that all orders and resolutions of the Board are carried into effect. He shall perform such other duties and have such other authority and powers as the Board of Directors may from time to time prescribe.

8.07. Amendment of Bylaws.

(a) These Bylaws may be altered, amended, or repealed at any meeting of the Board of Directors at which a quorum is present, by the affirmative vote of a majority of the Directors of the Corporation, provided notice of the proposed alteration, amendment, or repeal is contained in the notice of the meeting.

(b) These Bylaws may also be altered, amended or repealed at any meeting of the shareholders at which a quorum is present or represented, by the affirmative vote of the holders of a majority of the shares of the Corporation, entitled to vote thereon, provided notices of the proposed alteration, amendment or repeal is contained in the notice of the meeting.

■ Under the Bankruptcy Code, a case is commenced by the filing of a petition by any entity that may be a debtor under such chapter. 11 U.S.C. § 301. Corporations may be debtors under Chapter 11 of the Bankruptcy Code. However, corporations are creatures of statute and cannot act for themselves. They act through their agents who are required to act within their authority and in good faith.

■ The Court looks to Arkansas law to determine who has the authority to authorize a corporate bankruptcy case. *Price v. Gurney*, 324 U.S. 100, 65 S.Ct. 513, 89 L.Ed. 776

---

3. Directors may in good faith ratify unauthorized acts of its officers, including a bankruptcy filing. *Boyce v. Chemical Plastics, Inc.*, 175 F.2d 839

(8th Cir.1949), *cert. denied*, 338 U.S. 828, 70 S.Ct. 77, 94 L.Ed. 503 (1949).

(1945); *In re Giggles Restaurant, Inc.*, 103 B.R. 549 (Bankr.D.N.J.1989). Under Arkansas law corporations are managed by or under the direction of its board of directors. Ark.Code.Annot. § 4–27–801; *Horner v. New South Oilmill*, 130 Ark. 551, 197 S.W. 1163 (Ark.1917). Statutes with similar language have been held to authorize the board of directors to file a petition in bankruptcy. *See Boyce v. Chemical Plastics, Inc.*, 175 F.2d 839, 843 (8th Cir.1949), *cert. denied*, 338 U.S. 828, 70 S.Ct. 77, 94 L.Ed. 503 (1949).

■ The first question for the Court is whether any other governing person or body has the authority to authorize the filing of a petition in bankruptcy. It is well-settled that a bankruptcy filing is "a specific act requiring specific authorization." *In re Stavola/Manson Electric Co.*, 94 B.R. 21, 24 (Bankr.D.Conn.1988); *In re Moni–Stat, Inc.*, 84 B.R. 756, 757 (Bankr.D.Kan.1988); *In re Beck Rumbaugh Assoc., Inc.*, 49 B.R. 920, 921 (Bankr.E.D.Pa.1985), *appeal dismissed*, 1985 WL 38 (E.D.Pa. Sept. 11, 1985); *In re Penny Saver, Inc.*, 15 B.R. 252, 253 (Bankr. E.D.Pa.1981); *In re Al–Wyn Food Distributors, Inc.*, 8 B.R. 42, 43 (Bankr.M.D.Fla. 1980). In virtually every instance, this authority has been held to rest solely with the board of directors. *See, e.g., In re Runaway II, Inc.*, 159 B.R. 537, 538 (Bankr.W.D.Mo. 1993) ("[H]istorically it has always been true, even before the Bankruptcy Reform Act of 1978, that a valid resolution of the Board of Directors of a corporation was a prerequisite to the filing of a voluntary petition in bankruptcy by a corporation."); *In re Giggles Restaurant, Inc.*, 103 B.R. 549 (Bankr.D.N.J. 1989) ("[I]t is clear that any corporate resolution which authorizes the filing of a voluntary bankruptcy petition must originate at a validly held meeting of directors and must be approved by the proper number of such directors."); *In re Moni–Stat, Inc.*, 84 B.R. 756, 757 (Bankr.D.Kan.1988); ("[T]he law is clear that the decision of whether or not a corporation should file bankruptcy is a business decision to be made *only* by the board of directors.") (emphasis added); *see In re M & M Commercial Services, Inc.*, 115 B.R. 212 (Bankr.E.D.Mo.1990). The Court finds no authority in the law or the By-laws of these corporations that would permit any governing body, other than the board of directors, to authorize the filing of a petition in bankruptcy.

■ The authority for Arkco Corporation to file bankruptcy and the authority for each of the subsidiaries to file bankruptcy involves separate questions inasmuch as they have separate shareholders and directors. It is clear that the filing of Arkco Corporation's bankruptcy was unauthorized such that its case must be dismissed. On December 24, 1996, the shareholders of Arkco were two, W.T. Paine and Garland Ridenour, each holding fifty percent of the shares. On December 24, 1996, the directors of Arkco were Jimmie Paine and Garland Ridenour. As of December 24, 1996, there was no authorization by the Board of Arkco to file the bankruptcy case. On December 26, 1996, the Board declined to ratify the filing of Arkco's bankruptcy case. Thus, the case being filed without authority, it must be dismissed. *In re Moni–Stat, Inc.*, 84 B.R. 756 (Bankr. D.Kan.1988).

■ The filing of the cases by the subsidiaries presents a more difficult question because of the machinations of Ridenour in April 1995. However, a review of the facts indicates that his actions were also outside the bounds of the law and the by-laws under which Arkco and the subsidiary corporations are governed. The subsidiary debtors contend that the filing of the bankruptcy case was authorized by the sole director, Ridenour. However, since Ridenour was not validly elected as a director in April 1995, his actions in authorizing the filing of the bankruptcy are also invalid.

■ A corporation which owns stock is generally entitled to vote that stock in a manner like any other shareholder. *State ex rel. Washington Industries, Inc. v. Shacklett*, 512 S.W.2d 284 (Tenn.1974). In the absence of a state statute or by-law governing how shares held by a corporation are voted, it is for the board of directors to vote the shares. *Southmoor, Inc. v. Baptist Memorial Hospital*, 60 Tenn.App. 148, 444 S.W.2d 716 (Tenn. Ct.App.1969); *Fower v. Provo Bench Canal & Irrigation Co.*, 99 Utah 267, 101 P.2d 375

(1940), *cert. denied,* 313 U.S. 564, 61 S.Ct. 841, 85 L.Ed. 1523 (1941). This is in keeping with the more general premise that corporations are managed by the board of directors. Since the authority to make determinations regarding stock held by the corporation, including voting of such stock, is vested with the board, it is not for the president to make such decisions. Thus, Ridenour in his capacity as president of Arkco, did not have the authority to waive the notice requirements for the shareholder, did not have the authority to ratify actions of the board of directors of the subsidiaries, did not have the authority to amend the by-laws of the subsidiaries to reduce the number of Directors from three to one, and did not have the authority to thereafter elect himself the sole director of each. As mere president, he had no authority to make these decisions such that the election of the board—solely Ridenour—was invalid. Under the By-laws, amendments to the by-laws must be noticed to the directors or shareholders. This was not done. Although there exists a waiver, that waiver was executed by Ridenour in his capacity as president and, thus, is invalid.

It was for the board of directors of Arkco Corporation to vote the shares of Arkco Corporation to elect the directors of the subsidiaries. Since the shareholders of Arkco were scheduled to meet the next day to elect directors in order that governing decisions could be made, Ridenour's actions appear particularly manipulative. In light of the invalidity of his actions taken as president, his "authorization," as a director of the subsidiaries, to file the bankruptcies was not valid.

 The debtor argues that Ridenour, as president, had the authority to file bankruptcy petitions on behalf of all debt-

ors.[4] Each debtor initially argues that the resolution of the Board of Directors on April 10, 1995,[5] authorizing Ridenour to "deal with" the claims of W.P. Paine "necessarily includes" the authority to file a bankruptcy case. This argument is without merit. As discussed above, the filing of a corporate bankruptcy is "a specific act requiring specific authorization." *In re Stavola/Manson Electric Co.,* 94 B.R. 21 (Bankr.D.Conn.1988). Ridenour's mere status as president, assuming he was validly acting as president,[6] does not authorize him to file a bankruptcy petition on behalf of a corporation. Authority to perform specific acts on behalf of a corporation or under a general authority to manage the day-to-day affairs of a corporation does not constitute authority to file a petition in bankruptcy. *Community Book Co.,* 10 F.2d 616 (D.Minn.1926) (bankruptcy court lacked jurisdiction over petition filed by president). This Court holds that a broad ambiguous grant of power, such as is found in the resolution, does not include authorization to file a bankruptcy case. Indeed, even authorization to wind up and dissolve a corporation has been held to be insufficient to authorize the filing of a bankruptcy case. *In re Stavola/Manson Electric Co.,* 94 B.R. 21 (Bankr. D.Conn.1988). Ridenour's attempt to clothe himself with authority by comparing the hiring of counsel to institute suit on behalf of the corporation, *Elblum Holding Corp. v. Mintz,* 1 A.2d 204, 205 (Sup.Ct.N.J.1938), with the filing of a bankruptcy, is unsupported. *Cf. Lydia E. Pinkham Medicine Co. v. Gove,* 298 Mass. 53, 9 N.E.2d 573, 579 (1937) ("If this suit were brought in the ordinary course of business, we should have no doubt of the authority of the president to bring it."). *Cf. Barnes v. Heckman (In re Material Engineering Assoc.),* 168 B.R. 204 (Bankr.

4. The debtors' arguments, particularly in the proposed findings of fact, are misleading. For example, throughout the proposed findings, the recitation of events is placed out of order giving a particular, and often erroneous, impression of the facts. The debtors also characterize various acts and Ridenour's authority to act so broadly that they have no meaning. For example, the debtor asserts that Arkco's filing was authorized by Ridenour "in his current capacity with Arkco Corporation," but, in that context, fails to identify the nature of that capacity. Given the nature

of the law and these facts, such a characterization is disingenuous.

5. However, this resolution would be compelling evidence at a hearing held pursuant to 11 U.S.C. § 305(a).

6. Since the Court holds that Ridenour, as president, did not have the authority to authorize the filing of the bankruptcy case, the Court need not reach the issue of whether Ridenour could exert any authority as president.

W.D.Mo.1994) (broad delegation of power by board to president did not authorize self-dealing).

Debtor's assertion that the other directors, Ann Lewis and Wayne Crews, intended that he have such authority by virtue of this resolution is not borne out by the evidence for two reasons. First, they did not in fact testify that they intended the resolution to have such a specific effect. They merely testified that they trusted Ridenour to act in the best interest of the corporations, but at the time of the resolution, bankruptcy was not within their contemplation. Secondly, Lewis' and Crews' testimony would, in any event, he is entitled to little weight in this regard. Crews is Ridenour's personal accountant. He testified that he really did not know much about the corporations, had served for just a few months and believed the "resolution" gave Ridenour the authority to "do anything legal." Pressed to explain the statement, he could not. He said he had his own business to take care of and did not want to get involved with these corporations, particularly if a law suit was about to ensue. He was warned that the corporations had no director's liability insurance. Lewis, although Paine's niece, is employed by the corporations and admitted that she just signed whatever Ridenour directed her to sign. She had little, if any, knowledge of the factual import or legal effect of any of the documents she signed as director or Secretary. She simply wanted the parties to iron out their difficulties and get the litigation behind them so she could continue her job. Notably, after voting for this sweeping resolution, both Crews and Lewis promptly tendered their resignations as directors.

 The debtor, or, more accurately, Ridenour, also argues that Ridenour's position as holdover president, combined with an extremely perilous situation, gave him authority to file the bankruptcy cases. Again, the authority, and specifically that cited by the debtor, does not support this proposition. The acts of defending litigation brought against it, hiring attorneys, hiring advertisers, or instituting miscellaneous lawsuits on behalf of the corporation—even involving directors and shareholders—are not comparable to filing a bankruptcy case. Indeed, as cited above, even authorization for the filing of a dissolution proceeding has been held to be distinct from the authorization necessary to file a bankruptcy case. *In re Stavola/Manson Electric Co.*, 94 B.R. 21 (Bankr. D.Conn.1988).

In addition, Ridenour's assertions that he had the authority to file the petitions as president are belied by the manipulative tactics used to file on behalf of the subsidiaries and his subsequent actions to attempt to obtain ratification from Jimmie Paine and Arkco. If he believed his authority valid, his attempt to obtain ratification makes no sense. Third, assuming without holding, that if extreme peril existed such that it would permit an *immediate* filing without prior director approval, the Court holds that the filing must subsequently be properly ratified by members of the Board of Directors *validly holding office*. If the situation is so necessitous, a Board of Directors would readily ratify the filing of the bankruptcy case. *See Boyce v. Chemical Plastics, Inc.*, 175 F.2d 839 (8th Cir.1949), *cert. denied,* 338 U.S. 828, 70 S.Ct. 77, 94 L.Ed. 503 (1949) (directors may in good faith ratify unauthorized acts of its officers, including a bankruptcy filing); *see Madison Bank and Trust v. First National Bank of Huntsville,* 276 Ark. 405, 635 S.W.2d 268 (Ark.1982) (shareholders and directors could ratify president's action outside the scope of his authority). In this instance the Board of Arkco met two days after the bankruptcy filing but did not ratify the action. Accordingly, the bankruptcy filing of Arkco was invalid as without even the facade of corporate authority.

The debtors are interrelated, solvent corporations. Unfortunately, they are the subject of a bitter dispute between two persons, each fifty percent shareholders of the parent corporation, Arkco.[7] Some of the litigation

---

7. It was abundantly clear from the testimony and demeanor of the witnesses that it is the personal relationship between two individuals that is apparently irretrievably broken. Since neither has sufficient voting power to control the corporation, reorganization of these admittedly solvent corporations is unlikely if not impossible. The acrimonious and litigious history of these share-

has proceeded in state court to a conclusion,[8] at least at the trial stage.[9] It is admitted that these bankruptcies were filed solely to forestall the entry of judgment in that state court action. The Court notes, without making a determination, that this circumstance, combined with the evidence at this proceeding, indicate, *prima facie*, that the cases were filed in bad faith. However, since the cases must be dismissed as being filed without authorization, the Court does not reach the issue of bad faith. The fact that this is, in reality, a two-party dispute,[10] however, would compel the Court on its own motion, to notice an abstention hearing under section 305 of the Bankruptcy Code. These bankruptcy cases were filed without the proper authorization required by the laws and rules governing the corporations. Accordingly, it is

**ORDERED** that the Emergency Motion to Dismiss, filed on December 31, 1996, is GRANTED. This bankruptcy case is DISMISSED.

**IT IS SO ORDERED.**

holders has become an ongoing economic liability and obviously, ultimately may affect the value of the shares of the various companies. It may be that mediation would provide some movement toward settlement. In any event, the two 50% shareholders have little alternative than to seek some resolution between themselves or permit an orderly dissolution, hopefully maximizing the value of the assets and ultimately the worth of their respective shares. What does appear certain, however, is that these two 50% shareholders do not trust each other and no longer wish a business relationship.

8. Although the automatic stay would ordinarily render the entry of judgment post-petition invalid, there are remedies by which that judgment may be validated. *See, e.g., In re Pulley,* 196 B.R. 502 (Bankr.E.D.Ark.1996); *In re Reichenbach (Reichenbach v. Kizer),* 174 B.R. 997 (Bankr. E.D.Ark.1994), *appeal dismissed,* No. 95cv48 (E.D.Ark. May 22, 1996). Thus, the filing of these bankruptcy cases may not, in any event, preclude a valid state court judgment. Of course, dismissal of these cases reinstates any pre-petition proceeding. 11 U.S.C. § 349.

9. The debtors have filed a notice of appeal of the state court judgment.

10. The schedules of the debtors, with the exception of Jr. Food Mart, list only the other debtors, directors, and shareholders as unsecured creditors.