**In re JR. FOOD MART OF ARKANSAS, INC.**

**Bankruptcy No. 99–20011 S.**

United States Bankruptcy Court,
E.D. Arkansas,
Helena Division.

Oct. 18, 1999.

Audrey Evans, Little Rock, AR, for plaintiff.

Martha Jett McAlister, Susan Gordon Gunter, Gregory M. Hopkins, James E. Smith, Jeffrey J. Simon, David Kaufman, Little Rock, AR, for defendant.

## ORDER

MARY D. SCOTT, Bankruptcy Judge.

In this, the debtor's third foray into bankruptcy, the Court has no remedy for the debtor or creditors that the state court cannot fashion. Accordingly, this case will be dismissed pursuant to section 305(a) of the Bankruptcy Code. Indeed, this result was foretold when this Court dismissed the debtor's second bankruptcy case:

> Unfortunately, [these debtors] are the subject of a bitter dispute between two persons, each fifty percent shareholders of the parent corporation, Arkco. Some of the litigation has proceeded in state court to a conclusion, at least at the trial stage. It is admitted that these bankruptcies were filed solely to forestall the entry of judgment in that state court action. The Court notes, without making a determination, that this circumstance, combined with the evidence at this proceeding, indicate, *prima facie*, that the cases were filed in bad faith.... The fact that this is, in reality, a two-party dispute, however, would compel the Court's on its own motion, to notice an abstention hearing under section 305 of the Bankruptcy Code.

*In re Jr. Food Mart of Arkansas, Inc.,* 1997 WL 160462 (Bankr.E.D.Ark. Mar. 31, 1997), *appeal dismissed, In re Jr. Food Mart of Arkansas, Inc.,* 1997 WL 235137 (Bankr.E.D.Ark. Apr. 29, 1997).

## I.

The original owner of the convenience stores now under the name Jr. Food Mart was a man named Everett Attebury. In 1985, Attebury sold his stock to W.T. Paine. Attebury continued with the company as president until the pendency of Jr. Food Mart's first bankruptcy case when his contract was terminated.

In April 1987, Gregory Graham and W.T. Paine incorporated W.T.P., Inc., with W.T. Paine holding 100% percent of the shares of the company. The name of this corporation was changed on September 18, 1992, to Arkco Corporation, Inc. At that time, the number of directors for each of the corporations was also changed from one, W.T. Paine, to two, W.T. Paine and Garland Ridenour. Garland Ridenour was elected President of each of the eight corporations and became a 50% shareholder of Arkco. Arkco is also the 100% shareholder of numerous other entities, including Jr. Food Mart.

On November 5, 1990, Jr. Food Mart of Arkansas, Inc. filed a chapter 11 petition, Case No. 90–50419. The plan of reorganization, confirmed on June 22, 1992, created a trust which was responsible for paying allowed claims and made Union Planters Bank the trustee. The plan required the debtor to make yearly payments to the trustee for ten years with Union Planters to distribute the payments to its beneficiaries, the general unsecured creditors. Payments were made for four years.

At some point Paine and Ridenour ceased to be amicable business partners and the status of officer and directors was in disarray.[1] In 1994, Garland Ridenour was a director of Arko Corporation, the parent of Jr. Food Mart, as well as the president of Arkco. By Order of the state court, effective September 2, 1994, W.T. Paine was removed as a director of Arkco. Paine instituted a lawsuit and, on December 20, 1996, Arkco and its counsel learned that the state court intended to enter judgment against Arkco and its subsidiaries, in favor of Paine, in an amount in excess of two million dollars. The state court filed its findings of fact and conclusions of law on December 23, 1996.

The next day, December 24, 1996, Jr. Food Mart and its seven related entities filed for protection under Chapter 11 of the Bankruptcy Code. Paine filed a motion to dismiss each of the cases as being filed in bad faith and as being filed without the proper authority. The motion was granted and the cases dismissed in March 1997. *See, e.g., In re Arkco Properties, Inc.,* 207 B.R. 624, 630 n. 7 (Bankr.E.D.Ark.1997), *appeal dismissed,* 208 B.R. 466 (Bankr. E.D.Ark.1997); *In re Jr. Food Mart of Arkansas, Inc.,* 1997 WL 160462 (Bankr. E.D.Ark. Mar. 31, 1997).

From April through early October 1997, having obtained judgment and the bankruptcy case having been dismissed, Paine

---

1. As the Court noted in 1996:

   It was abundantly clear from the testimony and demeanor of the witnesses that it is the personal relationship between two individuals that is apparently irretrievably broken. Since neither has sufficient voting power to control the corporation, reorganization of these admittedly solvent corporations is unlikely if not impossible. The acrimonious and litigious history of these shareholders has become an ongoing economic liability and obviously, ultimately may affect the value of the shares of the various companies. It may be that mediation would provide some movement toward settlement. In any event, the two 50% shareholders have little alternative than to seek some resolution between themselves or permit an orderly dissolution, hopefully maximizing the value of the assets and ultimately the worth of their respective shares. What does appear certain, however, is that these two 50% shareholders do not trust each other and no longer wish a business relationship.

   *In re Arkco Properties, Inc.,* 207 B.R. 624, 630 n. 7 (Bankr.E.D.Ark.1997), *appeal dismissed,* 208 B.R. 466 (Bankr.E.D.Ark.1997).

executed on the assets of Jr. Food Mart and collected a little more than $2,000,000. In September 1997, Jr. Food Mart failed to make its fifth plan payment to Union Planters whereupon Union Planters filed a collection suit against Jr. Food Mart in the state court. Hearings on Union Planter's Motion for Summary Judgment were set for February and April 1998 and the matters were taken under advisement. In September 1998, Jr. Food Mart defaulted on its sixth plan payment and Union Planters amended its complaint to include this default. Its Amended Motion for Summary Judgment was set for hearing on January 28, 1999.

While this litigation was pursued, Paine and Ridenour continued their litigation over the dissolution of Arkco, the parent corporation of Jr. Food Mart, in which they were each fifty percent shareholders. The Arkansas circuit court ordered Ridenour to receive the stock of Jr. Food Mart but required that Jr. Food Mart pay Paine from its cash reserves. In June 1998, over $600,000 was directed by Jr. Food Mart to Paine or on his behalf.

In September 1998, Jr. Food Mart transferred assets to Arkco Petroleum, an entity owned and controlled by Ridenour. In December 1998, Jr. Food Mart transferred its remaining operational assets, including leases, inventory and equipment to Arkco Petroleum.

On January 6, 1999, Union Planters, Everett Attebury[2] and the Arkansas Department of Finance and Administration filed an involuntary chapter 7 petition. Ridenour determined that Jr. Food Mart would not contest the petition.[3] The debtor's listed unsecured creditors include Arkco Petroleum (the entity to whom Ridenour

effected transfer of Jr. Food Mart's assets), the state taxing authority, W.T. Paine, Everett Attebury, a life insurance company insuring the life of Attebury, one lessor, Union Planters, and the attorneys involved in the second bankruptcy cases. The only entity unrelated to the ongoing state court litigation is the state taxing authority and a lessor of equipment whose claim is a mere $12,000.[4] The schedules list no trade creditors despite the fact that the debtor was operating as late as December 1998, a few weeks before the involuntary was filed.

## II.

Under section 305 of the Bankruptcy Code, the Court may decline to exercise jurisdiction over a case under title 11. The court may dismiss a case or suspend all proceedings in the case if the interests of creditors and the debtor are better served by the dismissal or suspension. If, for example, property is subject to a dispute between particular creditors, and the resolution of the dispute will not affect the collection efforts by other creditors, abstention may be warranted. *In re 801 South Wells St., L.P.,* 192 B.R. 718, 35 C.B.C.2d 483 (Bankr.N.D.Ill.1996). Moreover, an involuntary case which is essentially a two party dispute may be dismissed. *In re Axl Industries, Inc.,* 127 B.R. 482 (S.D.Fla.1991) (listing factors), *aff'd,* 977 F.2d 598 (11th Cir.1992). *Accord In re Westerleigh Development Corp.,* 141 B.R. 38 (Bankr.S.D.N.Y.1992).

Appropriate factors to be analyzed in determining whether abstention under section 305 is appropriate include whether the petitioner can obtain adequate relief in a nonbankruptcy forum and the

---

**2.** When called to testify at the trial of this matter, Attebury demonstrated a startling unfamiliarity with the fact that he was a petitioning creditor in this involuntary bankruptcy case.

**3.** Since he had purportedly resigned as president of Jr. Food Mart in December 1998, it is unknown why he would be making that deter-

mination. Apparently, when the petition was filed, Jr. Food Mart had no corporate officer to respond to the involuntary petition.

**4.** The lessor's claim is less than one percent of the total unsecured debt. The DFA and the lessor's claim constitute five percent of the total unsecured debt.

motivations of the petitioning creditors. The nature of the assets of the estate are also important. If, for example, the only significant assets are lawsuits, there is little to administer pending resolution of litigation but the ensuing litigation serves to create administrative costs unduly burdensome to the estate. *See generally In re Axl Industries, Inc.*, 127 B.R. 482, 484–85 (S.D.Fla.1991), *aff'd*, 977 F.2d 598 (11th Cir.1992). In determining whether the best interests of the debtor and creditor are furthered by abstention, the court may consider whether arrangements are being negotiated out of court, whether there is prejudice to the rights of creditors, and whether the involuntary case was commenced by a few recalcitrant creditors to gain negotiating or other leverage in the state court lawsuits. *Id.*

### III.

■ This involuntary bankruptcy case is essentially a two party dispute. Although the previous (second) bankruptcy was prompted by the dispute between two shareholders of the debtor's parent corporation, that dispute is well on its way in the state court and this Court has previously refused to embroil itself in that state court litigation. The current dispute, prompting the third bankruptcy case, is simply debt litigation between the trustee of the debtor's creditors and the debtor corporation, Jr. Food Mart. The corporation was to pay the trust a sum on a yearly basis. For two years it did not do so and, as a result, was sued on that debt. Motions for summary judgment are pending

and, on the eve of the filing of the bankruptcy case, were set for hearing.

The testimony of the Union Planter's representative indicates that the essential reason for filing the involuntary petition was that the state court law suits were not proceeding in the manner that Union Planter's desired.[5] Union Planters was concerned that Ridenour would liquidate the corporation, court oversight was needed, and they believed they would not get a ruling from the state court.[6] Since Ridenour had apparently been specifically advised by the state court not to dissipate corporate assets, but, in any event had *already* transferred Jr. Food Mart's assets to another Arkco entity, this concern does not warrant the filing of a bankruptcy case, particularly in light of the fact that the state court was exercising jurisdiction over the assets and has sufficient power, authority and interest to avoid any fraudulent transfers, hold Ridenour in contempt, or otherwise remedy such wrongs—real or perceived.

■ More importantly, dissatisfaction with another court's rulings, or the perceived untimeliness of rulings, is not a reason to file a bankruptcy case. Indeed, such a filing may constitute an abuse of the bankruptcy process. It is not the province of the bankruptcy court to either oversee or manage a case more properly within the purview of the state courts simply because a party to litigation is dissatisfied for procedural or other reasons.

Although Union Planters believes this court should retain jurisdiction in order that a Chapter 7 trustee may review "how

---

**5.** Although dissatisfied with the state court's actions, Union Planter's primary difficulty derives from its own inability to make decisions. Although they had overtures from both Ridenour and Paine to settle the matters, they apparently failed to take action. Even when other parties made motions in the state court which would be beneficial to Union Planters, no action was taken to indicate support. Although they had the option of terminating the trust, and there were minuscule assets left to distribute to the beneficiaries compared to the debt and costs to be incurred in continuing

litigation, the trustee simply, through inertia, continued to litigate, ignoring overtures to settle. This problem was exacerbated by the inability of the beneficiaries to agree to particular settlements. It does not appear, however, that the beneficiaries were consulted regarding whether an involuntary bankruptcy case filing was appropriate.

**6.** The representative was apparently unaware that the matters were set for hearing.

a solvent $6.4 million dollar company in 1997 became a nonoperating entity with significant debt and little or no assets by January 1999," that concern is of little relevance in a corporate chapter 7 bankruptcy[7] when the interested creditors are already embroiled in collection lawsuits and corporate dissolution.[8] Moreover, relitigation of any of these issues in the bankruptcy forum would not only be extremely costly, it is without benefit to the creditors since the few assets of the estate would be dissipated by the litigation costs in obtaining the assets in the first place.

The state court matters are ongoing, long pending, and can be adjudicated in that forum. The debtor has ceased operations and, according to its schedules, has very few creditors. Indeed, the greatest class in number of creditors is its attorneys who were involved in prior litigation. The assets of the corporation are few and include primarily preference lawsuits and a few leases. Moreover, since one of the preference lawsuits appears to be an award made by the state court, Union Planters appears to be trying to circumvent an order of the state court directing payment to a specific creditor, another utilization of the bankruptcy court that is inappropriate.

Thus, this bankruptcy case is not in the best interest of the debtor or the creditors.

The debtor has ceased operations, its assets have been transferred and the state court has apparently assumed some jurisdiction over them. The creditors have remedies already being addressed or existing in state court. In light of the paucity of assets, the nature of the assets, the costs to the estate of garnering assets, and the lack of operations of the debtor, the creditors are not benefitted by a liquidating bankruptcy case.[9]

The trustee has little to distribute[10] and little prospect of acquiring funds even if preference and avoidance actions are pursued.[11] Moreover, it is questionable whether the trust is even yet in existence. If the trustee, Union Planters, desires to continue to litigate its dispute, it may continue to do so in state court. The fact that there exists one other creditor who permitted its name to be placed on the petition does not, under these circumstances, warrant a finding that the bankruptcy case is in the best interest of the creditors.

**ORDERED** that this bankruptcy case is dismissed pursuant to 11 U.S.C. § 305.

**IT IS SO ORDERED.**

7. Nonindividuals do not receive a discharge in chapter 7. 11 U.S.C. § 727(a)(1).

8. The corporation being dissolved is Arkco Corporation. Although Jr. Food Mart is not a named party, the state court is addressing the subsidiaries as well as the parent.

9. The Union Planter's representative even acknowledged this in a letter, stating "I do think Phil Tappen's analysis is correct that we are not likely to realize much through liquidation and the source of recovery would likely be at the cost of litigation to establish fraudulent transfers."

10. Union Planters self-described "most telling evidence" was the testimony of the chapter 7 trustee. However, his testimony was equivocal in that he needs further time to review the various issues and agreements and would "want to ask a few questions." The chapter 7 trustee, an attorney, indicated he was willing to take on a case the assets of which were primarily avoidance actions and other types of litigation.

11. Union Planters attempts to discredit the objecting creditor's motives by asserting that he may be concerned that his collection on the two million dollar judgment may be avoided as a preference. It appears, however, that receipt of those funds is outside the preference period, even were he an insider. Moreover, although Paine may be the only creditor "objecting" to the bankruptcy, at least one other—the co-chair of the creditor's committee in the 1990 case and the Authorized Committee Representative for the trust beneficiaries—testified that he was not in favor of the involuntary bankruptcy filing. He had not been consulted, however, prior to the filing.