**In re the CINCINNATI GEAR CO., Debtor.**

**No. 03–13441.**

United States Bankruptcy Court, S.D. Ohio, Western Division.

July 24, 2003.

Edmund J. Adams, Cincinnati, OH, Lead Attorney, representing George W. Fels, (Interested Party).

Philomena S. Ashdown, Cincinnati, OH, Lead Attorney, representing Provident Bank, (Creditor).

Anthony G. Covatta, Drew and Ward, Cincinnati, OH, Lead Attorney, representing Navatek Ltd., Honolulu, HI, (Petitioning Creditor).

David J. Demers, New Albany, OH, Lead Attorney, representing CitiCapital Commericial Corporation, Irving, TX, (Creditor).

Robert H. Hoskins, Cincinnati, OH, Lead Attorney, representing SSS Clutch Company, New Castle, DE, (Petitioning Creditor).

Jamie Ramsey, Cincinnati, OH, Lead Attorney, representing The Cincinnati Steel Treating Company, (Creditor).

Louis F. Solimine, Cincinnati, OH, Lead Attorney, representing The Cincinnati Gear Co., Cincinnati, OH, (Debtor).

## MEMORANDUM OF DECISION ON MOTION TO DISMISS AND MOTION TO ENFORCE STAY

JEFFERY P. HOPKINS, Bankruptcy Judge.

This matter is before the Court on the Motion to Dismiss ("Motion") (Doc. 15) filed by the Cincinnati Gear Company ("CGC") and the Emergency Motion of

Petitioning Creditor to Enforce Stay of State Court Proceedings ("Emergency Motion") (Doc. 20) filed by Navatek, Ltd. ("Navatek"). A hearing on the motions was held on June 27, 2003. Because bankruptcy would not provide CGC creditors with greater protections than they already possess outside of bankruptcy the Court will grant the Motion and deny the Emergency Motion as moot.

By October of 2002, CGC had assigned substantially all of its assets for the benefit of creditors. The assignment proceedings, governed by Ohio Rev.Code § 1313, are currently pending in the Hamilton County Probate Court. In May of 2003, this case was initiated by the filing of an involuntary petition by Navatek, Rexnord Industries, Inc., and SSS Clutch Company ("the Petitioning Creditors"). CGC has moved to dismiss pursuant to 11 U.S.C. § 305(a)(1), which provides:

> The Court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if—
>
> (1) the interests of creditors and the debtor would be better served by such dismissal or suspension[.]

Section 305(a)(1) is an extraordinary remedy that should be applied with extreme caution. *In re Edwards*, 214 B.R. 613, 620 (9th Cir. BAP 1997). Notwithstanding, Congress appears to have contemplated the use of this extreme remedy particularly in involuntary cases like this where an alternative arrangement exists for the protection of creditors. *See* H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 325 (1977); 1978 U.S.C.C.A.N. 5963, 6281 ("The court may dismiss or suspend under the first paragraph, for example, if an arrangement is being worked out by creditors and the debtor out of court, there is no prejudice to the rights of creditors in that arrangement, and an involuntary case has been commenced by a few recalcitrant creditors to provide a basis for future threats to extract full payment."). Consistent therewith, courts generally dismiss an involuntary case under § 305(a)(1) where the debtor has made an assignment for the benefit of creditors. *See e.g., In re Bailey's Beauticians Supply Co.*, 671 F.2d 1063 (7th Cir.1982); *In re Artists' Outlet, Inc.*, 25 B.R. 231 (Bankr.D.Mass.1982); *In re M. Egan Co., Inc.*, 24 B.R. 189 (Bankr. W.D.N.Y.1982); Mike C. Buckley & Gregory Sterling, What Banks Need to Know About ABCs, 120 Banking L.J. 48, 54 (2003) ("Reluctant creditors will find it difficult to attack an ABC. Creditors who file an involuntary bankruptcy case after the ABC will usually be faced with a motion by the Assignee or other interested parties to dismiss or abstain from the bankruptcy case on the grounds that the pending ABC is a more than adequate substitute for an involuntary bankruptcy case. Replacing one professional fiduciary with another would generally be a waste of resources and time, and most such involuntary bankruptcies are dismissed, or the bankruptcy court abstains in deference to the existing ABC.").

Counsel for the Petitioning Creditors acknowledged that CGC possesses no assets other than alleged causes of action that his clients want a bankruptcy trustee to pursue. These alleged causes of action include: (1) fraudulent conveyance actions; (2) preference actions; (3) actions to collect accounts receivable; and (4) an equitable subordination action.

The Petitioning Creditors argue that the CGC assignment does not provide unsecured creditors with the same protection as bankruptcy because the assignee does not have the ability to recover fraudulent conveyances and/or preferential transfers. Although the assignee cannot bring such

actions,[1] nothing precludes the Petitioning Creditors from pursuing these remedies in state court. Ohio Revised Code § 1336.04 and .05 affords creditors the opportunity to avoid fraudulent conveyances. Likewise, Ohio Revised Code § 1313.56 and .57 enables creditors to avoid preferential transfers.

Although the Petitioning Creditors questioned whether they were out of time to commence such actions, it appears as though they are not. The Petitioning Creditors contend that the allegedly avoidable transfers occurred in 2001 and 2002. There is a four year limitations period to recover fraudulent conveyances to non-insiders and preferential transfers. *See* Ohio Rev.Code § 1336.09(B) (providing four year limitations period for recovery of fraudulent conveyances as to non-insiders); *James v. McCoy*, 56 F.Supp.2d 919, 930 (S.D.Ohio 1998) ("Although [Ohio's preference statute] does not expressly contain a limitations period, Ohio Courts have interpreted the statute . . . to have a limitations period of four years following discovery."). Concerning fraudulent conveyances to insiders, there is a one year limitations period. *See* Ohio Rev.Code § 1336.09(C).[2] This, however, does not present a problem. The only insider alleged by the Petitioning Creditors to have been the recipient of a fraudulent conveyance is CGC's sister company, Cincinnati Steel Treating Company ("CSTC"). Navatek already filed a state court action against CSTC in May of 2002, seeking the recovery of fraudulent conveyances. Accordingly, the Petitioning Creditors would not lose the ability to pursue avoidable transfers if the Court were to dismiss this case.

The Petitioning Creditors also argue that there exist certain receivables of CGC that will not be collected outside of bankruptcy. To the contrary, the CGC assignment included all accounts receivable of CGC. The assignee has a fiduciary responsibility to CGC creditors to recover collectible receivables. Accordingly, as to the receivables, bankruptcy cannot provide the Petitioning Creditors with greater protection than they already have under the assignment.

Lastly, the Petitioning Creditors argue that there may exist an equitable subordination action against The Provident Bank if this case is not dismissed. However, the Assistant U.S. Trustee cogently noted that any panel trustee assigned this case would have no funds and no incentive to pursue such an action. In all probability, the case, were it to remain in bankruptcy, would be treated as one with no assets and closed, leaving the Petitioning Creditors in no better position than they already are.

Based upon the foregoing, this case appears to be a no asset case with the exception of alleged actions that creditors may pursue, and are pursuing, in state court. Courts have consistently held that dismissal is appropriate under § 305(a)(1) where the only estate assets are alleged lawsuits. *In re Axl Indus., Inc.*, 127 B.R. 482, 485 (S.D.Fla.1991); *In re Jr. Food Mart of Arkansas, Inc.*, 241 B.R. 423, 427 (Bankr. E.D.Ark.1999); *In re Deacon Plastics Machine, Inc.*, 49 B.R. 982, 983–84 (Bankr. D.Mass.1985).

1. It is undisputed that the CGC assignment did not include causes of action possessed by the company.

2. This assumes that the claims of the Petitioning Creditors arose prior to the alleged fraudulent conveyances and recovery must be sought pursuant to Ohio Rev.Code § 1336.05(B). If the claims of the Petitioning Creditors arose subsequent to the alleged fraudulent conveyances, the action would lie under § 1336.04 and there would be a four year limitations period pursuant to Ohio Rev. Code § 1336.09(A) & (B).

For the foregoing reasons, the Court will **GRANT** the Motion to Dismiss (Doc. 15). Because the Emergency Motion seeks a determination that the automatic stay in this case applies to certain state court proceedings, it is moot given that there is no longer an automatic stay once this case is dismissed. Accordingly, the Court will **DENY** the Emergency Motion of Petitioning Creditor to Enforce Stay of State Court Proceedings (Doc. 20). An order to this effect will be entered.

**IT IS SO ORDERED.**